## UNITED STATES v. RICHARDS.

### No. 6905.

Circuit Court of Appeals, Sixth Circuit.
Nov. 7, 1935.

J. G. Remey, of Washington, D. C. (Frank J. Wideman and Sewall Key, both of Washington, D. C., and E. B. Freed and Everett L. Foote, both of Cleveland, Ohio, on the brief), for the United States.

Fred R. Seibert, of Cleveland, Ohio, for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

As in Bryant Paper Co. v. Holden, 63 F.(2d) 370, we are again pressed for decision as to whether a claim for refund of a tax has been presented by the taxpayer in such form as to be subject to amendment after a claim wholly new would be barred by limitation. When the Bryant Paper Co. case was argued, the problem had not yet been illuminated by the substantially contemporaneous decisions of the Supreme Court in United States v. Memphis Cotton Oil Co., 288 U. S. 62, 53 S. Ct. 278, 282, 77 L. Ed. 619, United States v. Henry Prentiss & Co., 288 U. S. 73, 53 S. Ct. 283, 285, 77 L. Ed. 626, and United States v. Factors & Finance Co., 288 U. S. 89, 53 S. Ct. 287, 77 L. Ed. 633, and they are not cited in our opinion though noted on petition for rehearing Bryant Paper Co. v. Holden, 65 F.(2d) 1012, while Bemis Bros. Bag Co. v. United States, 289 U. S. 28, 53 S. Ct. 454, 457, 77 L. Ed. 1011, was announced after our decision.

█ As we understand the holdings of the Supreme Court, in determining whether a claim for refund as amended does or does not differ in matter of substance from the claim as first presented, we look to the analogy of such claim to pleadings in a lawsuit, which analogy, while not controlling, will have its place of influence when applied to administrative remedies in "due subordination to difference of end and aim," and may turn out to be controlling "if differences of end and aim are obscure or indecisive." This statement will perhaps be clarified as we proceed.

The taxpayer, plaintiff below, recovered judgment for $8,262.38, representing an additional assessment paid February 24, 1920, resulting from the disallowance of a deduction taken on his 1917 return for a proportionate part of excess profits tax paid by two partnerships of which he was a member. The question whether the refund claim was timely grows out of the circumstances to be narrated.

In his return for 1917 the taxpayer reported a tax liability of $14,334.98, which was duly assessed and paid on June 25, 1918. He claimed a deduction in determining net income for his proportion of excess profits taxes paid by the partnerships, but the Commissioner disallowed it and determined the additional tax. On February 28, 1923, the taxpayer filed a claim for refund of $22,680.05, which was for all of the taxes paid for the year 1917. The claim stated no specific grounds for recovery, but therein the taxpayer reserved the right to file as a part thereof such supplemental statements and evidence to substantiate his claim for refund of amounts illegally collected as should appear necessary. By successive waivers the time for filing claims for 1917 tax payment was extended to April 1, 1926, by virtue of the provisions of section 284 (g) of the Revenue Act of 1926 (26 USCA § 322 note). On March 15, 1924, the taxpayer filed another claim for refund of $23,164.50, which amount also represented all the taxes paid for 1917; the difference being accounted for by an additional assessment which, after a claim for abatement had been allowed in part, was paid on October 9, 1923. In his second claim for refund the taxpayer advised the Commissioner that the specific bases for the claim were dividends received from several corporations, which having been paid out of capital were tax-free to the stockholders, but as the tax cases of such corporations were still pending before the Bureau of Internal Revenue and undecided, it was impossible to ascertain the exact portion of the dividends which were paid out of capital, so that the ascertainment of the basis for calculating the refund due him could not then be finally decided, but that the necessary data would be submitted in support of the claim as soon as it was received from the corporations.

On June 3, 1925, the Commissioner by letter announced his rejection of the claim for the refund of $23,164.50, on the ground that the information available was not suf-

ficient upon which to base an allowance, and that the rejection would officially appear on the next schedule to be approved. The rejection letter, however, contained the following reservation: "Such rejection will in no way prejudice your rights, and in the event that the allocation of dividends is definitely determined at a subsequent date, a reopening of your claim will be permitted upon filing a similar request." The rejection was scheduled June 22, 1925. On April 29, 1929, the taxpayer filed an amended claim for $7,000, asking for a reopening of the claims previously filed. With the last claim he furnished additional information in respect to the allocation of dividends, but for the first time urged the allowance of a deduction on account of his portion of excess profits tax paid by the two partnerships in which he was a member. Though the Commissioner at first denied the request to reopen the claims for refund, he reconsidered this action and on October 8, 1932, allowed an overassessment of $930.92, with interest upon a reallocation of the corporation dividends received in 1917. This was concededly final decision on the refund claim of March 15, 1924. Upon accepting the allowance, the taxpayer agreed that it would not be construed as in any way extending the statute of limitations beyond that which existed prior to the acceptance of the refund.

▉ At the outset we are confronted with a motion to dismiss the appeal on the ground that the record contains no proper bill of exceptions. The case upon an agreed statement of facts was tried to the court without a jury, a jury having been waived in writing. At the conclusion of the trial the defendant presented proposed findings of fact and conclusions of law, and moved for judgment. Its findings and conclusions were rejected, and its motion overruled by judgment for the plaintiff, and exceptions thereto were properly preserved. Under such circumstances we have held that the sufficiency of the facts found to support the judgment, and whether the court erred in denying the defendant's motion for judgment and granting that of the plaintiff, are sufficiently preserved for our consideration. Routzahn v. Petroleum Iron Works Co. (C. C. A.) 56 F.(2d) 938. While some difficulty is experienced in ascertaining the precise fact findings of the court as distinguished from its legal conclusions, and while it does not appear that the plaintiff's proposed findings were ever adopted or the

court's invitation to submit further findings was ever accepted, we think, however, that the questions of law are sufficiently apparent upon the face of the record, and properly reserved, and the motion to dismiss is therefore overruled.

It is the plaintiff's theory of the case that having filed two timely claims for refund, one on February 28, 1923, and one on March 15, 1924, and no action having been taken by the Commissioner on the first, his proposed amendment thereto of April 29, 1929, was timely. It is his theory in the alternative that even though the general refund claim of February 28, 1923, was amended by and merged with the specific claim of March 15, 1924, nevertheless this merged claim was not finally rejected by the Commissioner's letter of June 3, 1925, by reason of the undertaking contained in the latter to reopen when additional data as to allocated dividends should be furnished, and in consequence the refund claim of April 29, 1929, having been filed while the earlier claim was still pending and undecided, was timely. The United States, however, contends that while the claim of February 28, 1923, being general could have been amended at any time prior to final rejection, yet having been made definite and specific by the claim of March 15, 1924, a different rule applies, and an amendment setting up new grounds must be treated as a new claim, and barred if the statute has run.

▉ We think it clear under the Memphis Cotton Oil Co. decision, supra, that where a timely general claim is filed, and a subsequent specific claim follows, before rejection, for a refund of the same taxes, the latter is an amendment to the former, and the two become "but a claim single and indivisible, the new indissolubly welded into the structure of the old," especially where, as here, the right to amend is specifically reserved in the earlier claim, and the identity of the amounts sought to be recovered is clear. The case resolves itself, therefore, not into one where a specific claim for refund is filed to correct mere irregularity of form, but into one where a timely specific claim, fully apprising the Commissioner as to the required scope of his investigation, is sought to be amended after the statute has run by adding grounds not before asserted, and which lead to inquiry not suggested or required by the earlier claim. "The line of division must be kept a sharp one," said the Supreme Court in the Memphis Cotton Oil Co. Case, "between the

function of a statute requiring the presentation of a claim within a given period of time, and the function of a regulation making provision as to form. The function of the statute, like that of limitations generally, is to give protection against stale demands. The function of the regulation is to facilitate research."

■ While the cases noted do not with precision point to the solution of the present problem, their reasoning greatly aids us. In the Memphis Cotton Oil Co. Case, the original refund claim lacked definiteness. Nevertheless, the Commissioner proceeded with his investigation, reaudited the tax return, and concluded that there had been an overpayment. It was later discovered that the original refund claim was irregular in form. This was cured by the amendment, and the court, both upon analogies drawn from law cases and in the light supplied by the practice of the Bureau, held the amendment timely. However, in the Henry Prentiss & Co. Case, a claim for refund on account of an overpayment which had come about through the undervaluation by the Commissioner of the taxpayer's invested capital, with a consequent increase of the profits to be taxed, was sought to be turned by amendment after the statute had run into an application for special relief under sections 327 and 328 of the Revenue Act of 1918 (40 Stat. 1093). Since the discretion of the Commissioner under these sections is not reviewable by the court in the absence of fraud or other irregularities, it was held that an amendment so far-reaching destroyed the identity of the original claim or cause of action, and was not permissible after the bar of the statute had fallen. The Factors & Finance Co. Case fell midway between the other two. The claim in its original form was one for money had and received. It did not specify a particular state of facts, as did the claim in the Henry Prentiss & Co. Case, abandoning all others. The claimant had left the grounds of challenge open. The amendment was sustained as being timely. In the Bemis Bros. Bag Co. Case, the original refund claim was based upon three grounds. Two were abandoned by amendment, but the third was not relinquished. There followed an amended claim, accompanied by a request for relief in the alternative. Since in amending the claim the Commissioner was merely asked to take action upon discoveries already in the making or perhaps already made, and to apply the remedy to established facts, the amendment was sustained as timely.

In the Memphis Cotton Oil Co. Case, the government and the taxpayer both invoked analogies suggested by pleadings in a lawsuit, apparently agreeing upon a general rule "that an amendment of a pleading will * * * relieve against the bar of an intervening limitation if the identity of the cause of action is still substantially the same, but that the limitation will prevail if under the guise of an amendment there is the substitution of a new cause of action in place of another wholly different." This analogy the court said was helpful, but not controlling, because, "A 'cause of action' may mean one thing for one purpose and something different for another. * * * At times and in certain contexts, it is identified with the infringement of a right. * * * At other times and in other contexts, it is a concept of the law of remedies." In general a claim for taxes overpaid must be viewed as a claim for money had and received, and a declaration according to the common count for money had and received may be good, though it does not tell us how the money was received. "This does not mean that a pleader who abandons the common count and states the particular facts out of which his grievance has arisen retains unfettered freedom to change the statement at his pleasure. * * * All will then depend on the degree and kind of the departure." Henry Prentiss & Co. Case. Reverting to the reasoning of the Memphis Cotton Oil Co. Case, the identity of the cause of action may be said in one aspect to depend upon the mere fact of overpayment, and in another upon the identity of the items illegally exacted, and hence upon the particular grounds that determine illegality. Choice between these meanings must keep in view the realities of administrative practice, and analogies borrowed from pleadings in a lawsuit will have their place and recognition, but in due subordination to differences of end and aim. So where, in one case, the issue relates to the amount of invested capital, and, in another, to the right of the taxpayer to invoke the discretion of the Commissioner under particular relief sections of the taxing statute, the grievances differ so essentially that the assertion of the one must be felt to be unrelated to any complaint as to the other. Since a determination on the application for special relief does not require a reascertainment of invested capital, in such case the Commissioner "will con-

ceive of the invested capital as deposited in a separate compartment which there is no need for him to open." Again testing the analogies from legal procedure by the necessities of administrative practice, the court in the Bemis Bros. Bag Co. Case applied this criterion: "In amending the claim by a prayer for alternative relief, a taxpayer is not forcing the inquiry into an unexplored territory, into strange and foreign paths. He is asking the Commissioner to take action upon discoveries already in the making or perhaps already made. * * * There is an adaptation of the relief to a case already proved."

In determining, therefore, whether by the amendment of September, 1929, the taxpayer here submitted to the Commissioner a new controversy, threw additional light on one already existing, or prayed for distinct relief upon facts already under consideration, and if by analogy to legal pleadings we may say the distinction in any aspect must be said to depend upon the identity of the items illegally exacted, or say that a departure from the common count by one who has stated the particular facts of his grievance must be determined by the degree and kind of departure, it seems to us there is no relationship between a claim for refund growing out of disallowance of dividends paid by corporations out of capital, and one arising from disallowance of excess profits taxes paid by partnerships, so close that an amendment of the first claim by the second may be recognized as mere amplification or correction presenting no new controversy.

██ And when tested by the necessities and mechanics of administrative practice, the answer must be the same. When confronted with a claim for refund based upon a disallowed deduction of tax-free dividends, investigation must perforce be made by the Commissioner of the dividend paying corporations' records to determine whether the fact be true that dividends were paid out of capital instead of earnings, and if so to what extent. Upon an examination of the second claim for refund he is directed to new channels, and examination is required of the records of entirely distinct commercial entities in order to determine the amount of excess profits taxes paid by the partnerships and the proportion thereof available to the taxpaying partner as an allowable deduction. There is here no discovery available "already in the making, or perhaps already made," and no possibility of "an adaptation of the relief to a case already proved." It is no answer to say that the facts were already before the Commissioner by virtue of the deduction claimed in the original return and its disallowance. The required statutory method for bringing an overassessment to the attention of the Commissioner is by a timely claim for refund, and without such claim there is nothing upon which the Commissioner may act. Our matured deliberation leads us to no departure from the holding or the reasoning of the Bryant Paper Co. decision, and we recognize no controlling distinction between it and the present case.

Another aspect of the controversy would seem to lead to the same conclusion. The Commissioner's rejection letter of June 3, 1925, was concededly not a final rejection of the claim based upon the disallowance as a deduction of corporation dividends. It was qualified by permission to reopen in the event that the allocation of dividends should thereafter be definitely determined. That such qualification threw open the door to the taxpayer in the face of the statute to reopen the claim for another and entirely different purpose, we doubt. Nor is there merit to the contention that the amended claim of September, 1929, having supplied the data missing in an earlier claim, and being received for that purpose, must now also be received for the purpose of setting up new grounds for refund on the theory that an amendment received for one purpose must be received for every purpose. If this were so all analogy to legal pleadings disappears, the purpose of the limitation statute is subverted, and the Commissioner is driven in all cases to absolute insistence upon rejection without qualifying reservations in the interest of justice to the taxpayer.

The court was in error in finding the amended claim for refund of April 29, 1929, to be timely filed.

Judgment is reversed, and the case remanded for further proceedings consistent herewith.