ANGELUS MILLING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 398 P. T.   Promulgated May 4, 1943.

*Prew Savoy, Esq.*, for the petitioner.
*Lloyd C. Hooks, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner filed a motion on January 29, 1943, to dismiss this proceeding on jurisdictional grounds, one of which is that the Court is without jurisdiction since the petitioner has never filed a proper claim for refund. The Commissioner argues that this petitioner has never filed a claim which has adequately set forth the basis upon which a refund could be granted. Several exhibits were introduced, the parties were heard at length, and each submitted a memorandum.

The petitioner was formerly known as Middleport Flour Mills, Inc. It has alleged that it was a processor of wheat during the period from July 9, 1933, to January 6, 1936, and that it paid $145,839.12 in processing taxes on wheat processed by it during that period. Attached to its petition are copies of certain claims for refunds and an amendment to claim marked Exhibits A, B, and C upon which the petitioner relies to show jurisdiction in this Court.

Exhibit C is a copy of an "Amendment to Claim" filed by the petitioner on August 15, 1938, claiming a refund of $145,839.12. It, alone, of the exhibits shows "Angelus Milling Company" as the name of the claimant. It is on Form P. T. 79, the form provided for a claim for refund of processing taxes. The form includes schedules A to E, inclusive, but those schedules are left blank. Attached to the form, on a separate piece of paper, is certain information purporting to show an allocation of refund due the Niagara Falls Milling Co. and the Angelus Milling Co. by comparing the sales of flour attributable to each. The total processing taxes paid is stated as $434,045.27. The only other information on this form is an affidavit of the president of the petitioner, which is in part as follows:

The within claim for refund was originally filed on the 22nd day of June 1936 in the name of the Niagara Falls Milling Company and/or Middleport Flour Mills, Inc. The name of Middleport Flour Mills Inc. was changed by permission of the Secretary of State of Albany, N. Y. to Middleport Flour Mills Inc.[1] Originally the claim in the name of both Companies was for the sum of $434,045.27.

Exhibit B attached to the petition is an alleged copy of a claim for refund filed by the Niagara Falls Milling Co. on Form P. T. 79, on which the amount claimed is $436,231.73. Information is given in the various schedules on that form. Apparently this claim was filed on June 30, 1937. One of the questions presented here is whether the "Amendment to Claim" filed by the petitioner (Exhibit C) may be regarded as an amendment to the claim filed by the Niagara Falls Milling Co. (Exhibit B). The original claim referred to in Exhibit C is described as having been filed in the name of "Niagara Falls Milling Company and/or Middleport Flour Mills, Inc." on June 22, 1936, claiming a refund of $434,045.27. Obviously the reference could not be to the original of Exhibit B. The name of Middleport Flour Mills, Inc., is nowhere mentioned on Exhibit B, the amount of $434,-045.27 does not appear on Exhibit B, and the date of filing was about a year after June 22, 1936. Furthermore, it is reasonably clear that the reference in Exhibit C is to the claims represented by Exhibit A.

Copies of three claims are included in Exhibit A. The taxpayer named in each is "Niagara Falls Milling Co., Inc. and/or Middleport Flour Mills, Inc." One is for $57,875.45, another is for $244,-895.40, and the third is for $131,274.42. The total of the three claims is $434,045.27. Apparently these claims were filed on or about June 22, 1936. The "Amendment to Claim" (Exhibit C) filed by the petitioner must have been intended as an amendment to the claims represented in Exhibit A. Those original claims were not made on Form P. T. 79, later provided and required by the Commissioner for

---

[1] The reference to Middleport Flour Mills, Inc., was error. The change in name was to "Angelus Milling Company."

claims for refund of processing taxes paid under the provisions of the Agricultural Adjustment Act, as amended. Instead, they were filed on an old Form 843, which was intended for a different purpose. The only information given on the claims represented by Exhibit A is a statement of taxes on processing of wheat paid by Niagara Falls Milling Co. for the period from July 31, 1933, to the end of that year, for the year 1934, and for the year 1935. The information required on Form P. T. 79 is not given on those claims.

The Commissioner denied the petitioner's claim for refund in a letter dated May 23, 1941, which was in part as follows:

Furthermore, your claim does not contain margins computed in accordance with section 907 of the Revenue Act of 1936 and Article 605 of Regulations 96, nor has any other evidence been submitted establishing that you bore the burden of the tax as required by section 902 of the Act and Article 606 of Regulations 96. Hence, you have not filed a true and complete claim in accordance with the requirements of section 903 of the Act and the regulations promulgated pursuant thereto.

Since you did not pay the tax, refund of which is claimed to the Government and you have not filed a true and complete claim in accordance with the requirements of Title VII of the Revenue Act of 1936, your claim is hereby disallowed in full.

Section 903 of the Revenue Act of 1936 provides that no refund shall be allowed of any amount paid under the Agricultural Adjustment Act unless after the enactment of the Revenue Act of 1936 (June 22, 1936) and prior to July 1, 1937, a claim for refund has been filed in accordance with regulations prescribed by the Commissioner with the approval of the Secretary. It further provides that all evidence relied upon in support of such claim shall be clearly set forth under oath. The Commissioner issued Regulations 86 relating to the above provision. Those regulations provide that claims shall be on the prescribed forms and shall be prepared in accordance with the instructions contained on the forms. Art. 201. They further provide that each claim shall set forth in detail and under oath each ground upon which the refund is claimed. Art. 202. Article 601 of those Regulations provides that claims for refund of amounts paid as processing tax shall be filed on P. T. Form 79. Article 605 requires that there be submitted as a part of each claim a statement showing the average margin for the tax period and for the period before and after the tax. It also requires a detailed showing of the manner in which the margins for each month and the average margin for each period were ascertained, the data and records upon which they were based, the location of such data and records, and all other related matters.

The United States Circuit Court of Appeals for the Eighth Circuit, in discussing claims for refund of processing taxes, said in *Lee Wilson & Co.* v. *Commissioner*, 111 Fed. (2d) 313:

The function of the facts called for by the schedules is to facilitate research; and the Commissioner was entitled to insist upon compliance with their direc-

tions as to the desired information. A claim that refers to no facts upon which it may be founded is ineffective and "will not supply a basis for a suit against the government when there has been neither waiver by the Commissioner nor amendment by the taxpayer."

Numerous cases were cited in support of that statement. The court in that case further held that evidence had to be set forth in the claim and "A claim that fails to meet the statutory requirements and that has been properly disallowed by the Commissioner as defective leaves the Board without jurisdiction to grant a refund." The same court on a second appeal by the same taxpayer (see *Lee Wilson & Co.* v. *Commissioner*, 123 Fed. (2d) 232) said:

Since the claim for refund failed to furnish to the respondent a sufficient evidentiary basis for determining the probable merits of the petitioner's asserted claim, we think the Board was without jurisdiction to grant petitioner a refund and did not err in dismissing the petition for review.

See also *Landrum* v. *Commissioner*, 122 Fed. (2d) 857; *Tennessee Consolidated Coal Co.* v. *Commissioner*, 117 Fed. (2d) 452. Cf. *Samara* v. *United States*, 129 Fed. (2d) 594; certiorari denied, 317 U. S. 686.

The "Amendment to Claim" which the petitioner filed on or about August 15, 1938, does not set forth a sufficient evidentiary basis for determining the probable merits of the asserted claim. The petitioner does not argue to the contrary. That "Amendment to Claim" was not an amendment to the claim of "Niagara Falls Milling Co., Inc.," represented by Exhibit B.[2] It was obviously intended as an amendment to the claims filed in 1936 under the names of "Niagara Falls Milling Co., Inc.," and "Middleport Flour Mills, Inc." The "Amendment to Claim" and those original claims, when read together, do not set forth a sufficient evidentiary basis for determining the probable merits of the asserted claim. Therefore, under the authority of the cases above cited, the claims relied upon by the petitioner are insufficient to give this Court jurisdiction in the proceedings.

The above cases indicate that the Commissioner may waive a defect in a claim, and the petitioner argues that he has waived all defects in its claims by examining the petitioner's books and considering its claim on the merits thereof without regard to any technical defects in the form of the claims filed. The petitioner relies upon an affidavit of one of its officers, an accountant, and upon the affidavit of another accountant, as well as upon a letter from a deputy collector, to show that the Commissioner examined the books of the petitioner while considering the claim for refund of the petitioner and before denying

---

[2] There is no claim or even indication that B was an amendment of A. B is apparently complete within itself. Each was filed within the time allowed by statute for filing original claims.

that claim. It has not shown, however, that the Commissioner waived any defects in its claim.

The petitioner contends that it was operated so closely with the Niagara Falls Milling Co. that only with care can the affairs of the two be separated. Most of the stock of the two was held by the same stockholders. The officers and directors of the two were the same. Only one set of books was kept for the two and one bank account was maintained. Purchases, processing, and sales were allocated between the two by the officers. It contends, however, that eventually the transactions were charged or credited to separate accounts on the single set of books in such a way that the operations of each could be shown upon the trial of this case if the books were available. The letter from the deputy collector was to Harry Dickinson. He was then the president of the Niagara Falls Milling Co. and also the president of the petitioner. The letter requested permission to examine the books of the petitioner in connection with the investigation of a claim for refund, claim F5899. Claim F5899 was the claim of the Niagara Falls Milling Co., whereas the claim of the petitioner was F10130. Thus, the letter does not support the petitioner's contention that the Commissioner gave consideration to the merits of its own claim. Furthermore, we are told that the books of the petitioner were the same as the books of the Niagara Falls Milling Co. The Commissioner could not investigate the claim of the latter without examining its books, which were likewise the books of the petitioner. The affidavits are not convincing that the Commissioner waived any defects in the claim of this petitioner. There is no allegation in the petitioner's pleadings to the effect that the Commissioner waived defects and investigated the claim on its merits. On the contrary, the petition assigns as one of the errors the action of the Commissioner "in failing to give consideration to, and the usual hearings on, petitioner's claim." The letter of the Commissioner rejecting the claim of the petitioner indicates on its face that the Commissioner did not waive any defects in the claim. The reasons, and the only reasons, given for rejecting the claim relate to defects therein, one being that the claim did not contain the necessary information and the other that it did not show the tax as paid by the petitioner.[3]

We are unable to hold that the Commissioner has waived defects in the claim. The proceeding must be dismissed for lack of jurisdiction. Discussion of the other ground advanced by the respondent is unnecessary.

---

[3] The claims state that the tax was paid by Niagara.