BURWELL MOTOR COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30459.   Filed November 14, 1957.

---

*Frederic D. Dassori, Esq.*, for the petitioner.
*Arnold I. Weber, Esq.*, for the respondent.

### OPINION.

FORRESTER, *Judge:* Respondent has disallowed claims by petitioner for relief under section 722 (b) (4) [1] of the Internal Revenue Code of 1939 in respect of excess profits taxes for the taxable years 1941, 1943, 1944, and 1945. Petitioner requested and there was granted a severance of the statutory limitations question; consequently, the sole issue before us is whether respondent erred in determining that the relief sought, with a minor exception, is barred by the period of limitation set forth in section 322 (b) (1) [2] of the Internal Revenue Code of 1939.

---

[1] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

* * * * * * *

(4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time. For the purpose of this subparagraph, the term "change in the character of the business" includes a change in the operation or management of the business, a difference in the products or services furnished, a difference in the capacity for production or operation, a difference in the ratio of nonborrowed capital to total capital, and the acquisition before January 1, 1940, of all or part of the assets of a competitor, with the result that the competition of such competitor was eliminated or diminished. Any change in the capacity for production or operation of the business consummated during any taxable year ending after December 31, 1939, as a result of a course of action to which the taxpayer was committed prior to January 1, 1940, * * * shall be deemed to be a change on December 31, 1939, in the character of the business, or * * *

[2] SEC. 322. REFUNDS AND CREDITS.

(b) LIMITATION ON ALLOWANCE.—

(1) PERIOD OF LIMITATION.—Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or refund shall be allowed or made after the expiration of whichever of such periods expires the later. If no return is filed by the taxpayer, then no credit or refund shall be allowed or made after two years from the time the tax was paid, unless before the expiration of such period a claim therefor is filed by the taxpayer.

All of the facts have been stipulated and are found accordingly.

Petitioner is a corporation organized under the laws of the State of Florida, with its principal place of business in Jacksonville, Florida. Its corporation income and declared value excess-profits tax return and corporation excess profits tax return for each of the calendar years 1941, 1943, 1944, and 1945 were filed on an accrual basis with the then collector of internal revenue for the district of Florida at Jacksonville. Its actual average base period net income for 1941 was in the amount of $13,914.65, and for each of the other foregoing taxable years in the amount of $15,834.92.

The amount of excess profits tax shown as due upon each of the foregoing excess profits tax returns and the date of final payment thereof are as follows:

| Year | Amount | Date |
|------|--------|------|
| 1941 | $3,936.40 | May 17, 1943 |
| 1943 | 3,662.39 | June 14, 1945 |
| 1944 | 14,615.50 | Dec. 19, 1945 |
| 1945 | 21,514.04 | [1] Dec. 20, 1946 |

[1] On August 14, 1947, a deficiency in excess profits tax for 1945 was collected in the amount of $256.41.

On December 5, 1944, a consent was filed extending to June 30, 1946, the period within which assessments might be made in respect of income and excess profits taxes for the taxable year 1941. Subsequently, petitioner filed Form 991 applications for relief under section 722 as follows:

| Year | Date filed | Refund claimed |
|------|------------|----------------|
| 1941 | Mar. 14, 1945 | $3,936.40 |
| 1943 | Mar. 7, 1947 | 3,296.15 |
| 1944 | Dec. 11, 1947 | 11,836.08 |
| 1945 | Dec. 11, 1947 | 11,443.59 |

Each of the foregoing Form 991 applications made claim for relief under all paragraphs of subsection (b) of section 722, and claimed a constructive average base period net income (hereinafter sometimes referred to as CABPNI) in the amount of $30,406.88 (which was taxpayer's net income for the taxable year 1941).

Schedule B of Form 991 relates to taxpayers entitled to excess profits credit based on income. Petitioner is such a taxpayer. In provisions numbered 1 through 5, Schedule B sets forth in numerical order the various general grounds for relief set forth in section 722 (b) (1) to (5), inclusive. A box is provided with respect to each provision, to be marked by a taxpayer claiming thereunder, and all five boxes were so marked. Provision 4 of Schedule B relates to section 722 (b) (4) and reads as follows:

4. The business of the taxpayer was commenced or there was a change in the character of the business immediately prior to or during the base period (section 722 (b) (4)).

(a) On what date did commencement of business or change in character of business occur? _____

(b) If change in character of the business has occurred, submit statement of:

(1) Nature of change in character of business.

(2) Portion of the definition in section 722 (b) (4) within which such change is claimed to have occurred.

(3) Evidence supporting contention that average base period net income does not reflect normal operations for the entire base period.

(c) Did the business reach, by the end of the base period, the earning level it would have reached if the business had been commenced, or if the change in the character of the business had occurred, 2 years prior to the time the commencement or change occurred? _____ If answer is "no," furnish particulars.

(d) Was change in capacity for production or operation of business consummated during a taxable year ending after December 31, 1939, as a result of a course of action to which taxpayer was committed prior to January 1, 1940? _____

(e) If answer to (d) is "yes":

(1) State date upon which such change was consummated and extent to which income for such year reflects such change.

(2) Submit evidence of commitment to a course of action prior to January 1, 1940.

(3) Attach schedule showing net capital addition or net capital reduction (section 713 (g) (1) or (2)) and the amount of money or property expended after the beginning of the first excess profits tax taxable year under the Internal Revenue Code in changing the capacity for production or operation of the business.

Petitioner placed an "x" in the box preceding the numeral "4," and answered "No" to the question propounded by (c). No further information with respect to the nature of petitioner's claim under section 722 (b) (4) was set forth on the printed Form 991.

Additional sheets were attached to the application form for 1941. Most of such sheets contain matters purportedly justifying relief under provisions of section 722 (b) other than 722 (b) (4), and in no way relevant to the latter provision. The only information or statements related to the claim under section 722 (b) (4) occur on "Page 1" of such attached sheets, where petitioner merely repeated the language appearing immediately after the numeral "4" on Schedule B of the printed form, and on "Page 9" of such sheets where the following statement appears:

The amount of constructive average base period net income which is considered to be a fair and just amount representing normal earnings is $30,406.88 which represents the net income for the taxable year 1941. Taxpayer contends that due to the change of product, from Ford to Chevrolet, and various other factors a normal operation was not realized until the year 1941.

The foregoing material was headed "Item 6, Schedule 'A.'" Item 6 of Schedule A of the Form 991 reads as follows:

6. Amount of constructive average base period net income claimed for use in computing excess profits tax for taxable year. (Furnish particulars supporting amount claimed and details involved in computation.) ------ $------

Petitioner, in answer to the foregoing, stated its CABPNI to be $30,406.88, and noted "Schedule Attached." All information contained in the application with respect to 1941 was repeated or incorporated by reference in the applications filed with respect to all the other years in controversy herein. None of such applications contains any further material or information reasonably related to a claim for relief based upon the provisions of section 722 (b) (4) of the Internal Revenue Code of 1939.

On March 8, 1947, petitioner filed a Form 843 claim for refund for its taxable year 1941. The claim refers to the application for relief filed for that year, and states that "[t]his claim filed to protect the interest of the taxpayer to the extent that Form 991 is not a claim for refund." No further information relevant to relief under section 722 (b) (4) was submitted in connection therewith.

An examining officer's report, dated March 1, 1948, recommended that no relief be granted for 1941 and 1943. The transmittal letter accompanying the report alleged that petitioner, although repeatedly requested to do so, failed to submit data necessary to a proper consideration of its claim.

Accordingly, the internal revenue agent in charge sent petitioner a 30-day letter under date of March 12, 1948, informing it of the proposed denial of its claims for relief for 1941 and 1943. Another 30-day letter, dated May 17, 1948, proposed to deny the applications in respect of 1944 and 1945.

On May 24 and 25, 1948, petitioner made protest against the proposed disallowances. The allegations contained in the protests were substantially as follows:

1. Petitioner had sold Ford automobiles until it obtained a Chevrolet franchise in the model year 1935.[3] It had established an excellent reputation as a Ford dealer, and experienced difficulty in establishing itself in its new line.

2. The Ford factory and local Ford dealers opened an extensive selling campaign to prevent petitioner from retaining customers with whom it, as a Ford dealer, had dealt in the past.

3. Jacksonville was a Ford stronghold, and the site of a Ford assembly plant. A policy existed of attempting to eliminate competing

---

[3] There is some inconsistency with respect to the year of change. It is sometimes alleged to have occurred in 1933 (presumably effective for the model year 1934). At any rate, such discrepancy is not material to the issue to be decided herein.

makes of cars. Various trade practices of questionable ethics were carried on in furtherance of this policy.

4. Petitioner's personnel required retraining in order properly to handle Chevrolet products.

5. Various changes took place in key personnel during 1936 and 1938.

6. Petitioner's growth over the years has required additional space from time to time, resulting in the addition of a third story to the building in which it maintained its principal place of business. Additional ground space was acquired under highly onerous terms, and a modern 2-story building erected thereon.

7. A second used car outlet was acquired in 1937, and was operated through November 1938. A third such outlet was acquired in May 1938, and was operated through February 1943. Another larger lot was opened in 1939.

8. In 1939 a 2-story building was leased and used as a reconditioning shop, apart from petitioner's regular service facilities.

As a result of the foregoing, a conference was held on August 12, 1948. A committee field conference report summarizing the conference noted that petitioner's claims remained unsupported by data respecting petitioner's operations, notwithstanding numerous requests on the part of Government representatives. It was recommended that in view of petitioner's failure to cooperate in active consideration of its claims the case should receive no further consideration. A certification to this effect was made to the Excess Profits Tax Council.

Following a letter to petitioner by the Chairman of the Excess Profits Tax Council, a second conference was held on May 19, 1949. The following statement appears in the conference notes:

The taxpayer is now contending that it qualifies for relief under section 722 (b) (4) because of its so-called exclusive agency secured during the summer of 1939. The taxpayer admitted that this new contention had not been made previous to this conference. Mr. Dassori [petitioner's representative] produced profit and loss statements to show the increased profits made by the taxpayer after it had become the exclusive Chevrolet dealer in Jacksonville, but these statements were not offered in evidence during the conference. Mr. Dassori requested and was granted permission to submit in written affidavit form the details of taxpayer's contention under this claimed factor, together with a proposed reconstruction of net income for the base period. This information is to be submitted not later than June 15, 1949.

Various extensions of time were granted, and on or about August 13, 1949, petitioner finally submitted additional information; certain corrective material was subsequently submitted on or about August 23, 1949, and October 18, 1949. A letter from petitioner's president accompanied the data, and alleged that in 1939 three major changes took place:

1. The franchise of the sole competing Chevrolet dealer was canceled.

2. Petitioner changed from a conservative to a volume sales policy.

3. Additional operating facilities were acquired, and existing facilities were remodeled.

A third conference took place on February 28, 1950. The conference notes compiled thereon state that petitioner was informed that its contentions respecting change of operation in 1939, all fundamentally premised upon the exclusive dealership, were not within the scope of the original claims for relief, and, having been first raised on May 19, 1949, were therefore barred by the statute of limitations.[4]

It is apparent from the entire record that respondent at no time considered upon their merits the contentions first raised by petitioner at the 1949 conference. Petitioner seems never to have challenged respondent's assertion that the matter of the exclusive franchise and consequences flowing therefrom had not been raised prior to the conference of May 19, 1949. It has instead taken the position that such matter was not a new ground or basis of relief under section 722, but merely new evidence in support of a general claim under section 722 (b) (4), based upon commencement or change in character of business during or immediately prior to the base period.

On June 13, 1950, petitioner's claims for section 722 relief were denied in full and a statutory notice to that effect was sent by registered mail.

It should be noted at the outset that we are not here concerned with the much litigated question of the jurisdiction of the Tax Court over so-called standard issues in a proceeding pursuant to section 722. See, e. g., *Commissioner* v. *Seminole Mfg. Co.*, (C. A. 5) 233 F. 2d 395; *H. Fendrich, Inc.* v. *Commissioner*, (C. A. 7) 192 F. 2d 916; *Martin Weiner Corp.*, 21 T. C. 470, revd. (C. A. 2) 223 F. 2d 444; and *Mutual Lumber Co.*, 16 T. C. 370.

In this proceeding petitioner is now seeking relief solely under section 722 (b) (4), and there is no doubt that we have jurisdiction to pass upon the question presented. We do not understand that respondent claims otherwise. The sole issue here is whether the statute of limitations bars petitioner's present contentions.

Petitioner requested and has been granted a severance of the issue, raised as an affirmative defense by respondent, of the statute of limitations, and that issue alone is before us for adjudication. Respondent may waive his regulatory requirements, but is powerless to waive those created directly by statute. Cf. *Angelus Milling*

---

[4] Again, there was an exception of the amount of $256.41 assessed in 1947 as a deficiency in respect of petitioner's taxable year 1945.

*Co.*, 1 T. C. 1031, affd. (C. A. 2) 144 F. 2d 469, affd. 325 U. S. 293, rehearing denied 325 U. S. 895.

In *United States* v. *Memphis Cotton Oil Co.*, 288 U. S. 62, the Supreme Court held that where the original claim did not rely upon any specific basis for the relief sought, but was a broad and general claim for refund, it could be amended after expiration of the time within which an original claim could have been filed, so as to specify a particular ground for relief. Cf. *Moore Ice Cream Co.* v. *Rose*, 289 U. S. 373; *United States* v. *Factors & Finance Co.*, 288 U. S. 89. On the other hand, in *United States* v. *Henry Prentiss & Co.*, 288 U. S. 73, that Court held on the same day that where the original timely claim asserted a specific ground, it could not be amended out of time to claim a new basis for relief unrelated to that first set forth. Cf. *United States* v. *Richards*, (C. A. 6) 79 F. 2d 797, certiorari denied 297 U. S. 718.

In *United States* v. *Andrews*, 302 U. S. 517, an original timely refund claim was based upon alleged worthlessness of stock. After expiration of the period within which an original claim could have been timely filed, the taxpayer filed a purported amendment, claiming that an amount reported as a dividend was in reality proceeds from the sale of stock. The Court held the purported amendment to constitute a new claim barred by the statute of limitations, and, citing, *inter alia*, the *Memphis Cotton Oil Co.* and *Henry Prentiss & Co.* cases, both *supra*, was careful to draw a distinction between an amendment which amplifies an earlier claim couched only in general terms and one which states a new and different basis for relief or recovery not fairly within the scope of the original application. The Court said at page 524:

> Where a claim which the Commissioner could have rejected as too general, and as omitting to specify the matters needing investigation, has not misled him but has been the basis of an investigation which disclosed facts necessary to his action in making a refund, an amendment which merely makes more definite the matters already within his knowledge, or which, in the course of his investigation, he would naturally have ascertained, is permissible. On the other hand, a claim which demands relief *upon one asserted fact situation*, and asks an investigation of the elements appropriate to the requested relief, cannot be amended to discard that basis and invoke action requiring examination of other matters not germane to the first claim. [Emphasis added.]

In *Pink* v. *United States*, 105 F. 2d 183, 187, the Court of Appeals for the Second Circuit explained the doctrine as follows:

> Whether a new ground of recovery may be introduced after the statute has run by amending a pending claim filed in time depends upon the facts which an investigation of the original claim would disclose. Where the facts upon which the amendment is based would necessarily have been ascertained by the commissioner in determining the merits of the original claim, the amendment is proper. Bemis Bros. Bag Co. v. United States, 289 U. S. 28, 53 S. Ct.

454, 77 L. Ed. 1011; United States v. Memphis Cotton Oil Co., 288 U. S. 62, 53 S. Ct. 278, 77 L. Ed. 619; United States v. Factors & Finance Co., 288 U. S. 89, 53 S. Ct. 287, 77 L. Ed. 633. The rule is otherwise when the amendment requires the examination of new matters which would not have been disclosed by an investigation of the original claim. United States v. Andrews, 302 U. S. 517, 58 S. Ct. 315, 82 L. Ed. 398; United States v. Garbutt Oil Co., 302 U. S. 528, 58 S. Ct. 320, 82 L. Ed. 405; Marks v. United States, 2 Cir., 98 F. 2d 564. * * *

Thus, an amendment filed after the time for filing a new claim has elapsed escapes the statutory bar only if the facts underlying the matters specified therein would come to light as a result of that investigation which would be required by an examination on the merits of the original timely claim. If such is not the case, the so-called amendment is in reality a new and untimely claim, and barred, not merely by regulation, but by statute. Cf. *United States* v. *Garbutt Oil Co.*, 302 U. S. 528; *Bemis Bro. Bag Co.* v. *United States*, 289 U. S. 28; *United States* v. *Baltimore & O. R. Co.*, (C. A. 4) 124 F. 2d 344; *Pink* v. *United States, supra; Zachary* v. *United States*, (D. Conn.) 126 F. Supp. 726, affd. (C. A. 2) 220 F. 2d 749.

No formal amendment to petitioner's claim has ever been made. However, on May 19, 1949, it was made apparent to respondent for the first time that petitioner claimed relief on the same basis which it has alleged in the petition in this proceeding. We will, solely in determining the instant controversy, treat the matter as though a formal purported amendment had been filed on that date. Cf. *United States* v. *Pierotti*, (C. A. 9) 154 F. 2d 758. The issue can thus be framed as follows: On May 19, 1949, did the statute of limitations bar petitioner from amending its applications for relief so as to claim relief under section 722 (b) (4) on the grounds that in 1939 its franchise became exclusive in its territory and it changed its method of operation from conservative to volume sales, increasing its operating facilities in the process of such change?

In *United States* v. *Andrews, supra*, the basic guide rules are set forth. The controlling question is whether the facts underlying the assertions first made in 1949 would be discovered in the course of the investigation called for by the claim as originally filed, together, of course, with any supplementary material, which must be deemed a part of such claim. We think this question must be answered in the negative.

Section 722 (b) (4) is broad and encompasses many factually unrelated possible grounds for relief. An investigation resulting from one such factual allegation need not necessarily lead to facts underlying another basis for relief, notwithstanding that both constitute grounds for relief under the same provision of law. Thus, we do not regard as determinative the fact that in the original applications relief was sought under, *inter alia*, section 722 (b) (4),

and that the same provision was relied upon with respect to the new assertions made at the conference of May 19, 1949. Cf. *Brown Paper Mill Co.*, 23 T. C. 47, 64.

The original applications claimed as a basis for relief under section 722 (b) (4) that petitioner had changed its product from Ford to Chevrolet. Further information later supplied by petitioner shows this change to have occurred in 1933 or 1934, some time prior to the beginning of the base period. An investigation of that claim could not thinkably apprise respondent of the fact that in 1939 petitioner's only competitor for Chevrolet sales lost its franchise, and that petitioner altered its operations at or about that time so as to change from a conservative to a volume sales method.

Indeed, by specifying as the factual basis for relief under section 722 (b) (4) a change in product in the model year of 1934 or 1935, petitioner at least tacitly abandoned any claim for such relief based upon the exclusive dealership, which first arose in 1939. The Form 991 applications as originally filed, together with all additional material pertinent thereto filed with or otherwise brought to respondent's attention within the statutory period, if anything, would tend to direct his attention away from rather than toward matters taking place in 1939. Cf. *United States* v. *Factors & Finance Co.*, 288 U. S. 89, where the Supreme Court, distinguishing the case before it from one involving a specific claim, said at page 94:

> This is not a case where the grounds injected by the amendment have already been abandoned by agreement tacit or express. Such abandonment and agreement there was in the *Prentiss* case, the claimant seeking at the beginning the privilege of the special method of assessment and reverting thereafter to another ground of challenge which by implication, if not expressly, it had promised to renounce. This is a case where the claimant has left the grounds of challenge open, and where the Bureau has itself to blame for not insisting at the outset upon a full disclosure of the grievance.

It should be kept in mind in this connection that the issue in the instant case is whether the statute, not respondent's regulations, bars the amendment.

In its original claim, timely filed, petitioner's only specifications as to section 722 (b) (4) were as follows:

> "The business of the taxpayer was commenced or there was a change in character of the business immediately prior to or during the base period (section 722 (b) (4))."

> and

> The checking of paragraph No. 4 on page 3 of Form 991 (indicating that its business was commenced or that there was a change in the character of its business immediately prior to or during the base period absent which commencement or change earnings level during the base period would have been higher).

and

A statement designed to support petitioner's computation of increased average base period net income in the following words: "Taxpayer contends that due to the change of product, from Ford to Chevrolet, and *various other factors* a normal operation was not realized until the year 1941." [Emphasis added.]

The first of the above specifications merely paraphrases the statute; the second adds nothing not contained in the third. Thus, it is clear that petitioner's only timely application for relief under section 722 (b) (4) consisted of one specific and one general claim, the specific: "due to the change of product, from Ford to Chevrolet," and the general: "and various other factors."

Thereafter, protests were filed on May 24 and 25, 1948. These protests contained statements which can be likened to a bill of particulars enlarging upon and showing results flowing from the asserted circumstance of change from Ford to Chevrolet.

Thereafter, on May 19, 1949, and after the statute had run as to all the years under consideration (except for the small deficiency for 1945, hereinbefore identified), for the first time the taxpayer asserted the ground which is now relied upon, i. e., cancellation of the sole competing Chevrolet dealer's franchise in 1939.

On May 24 and 25, 1948, petitioner had specified the remodeling of existing facilities and the acquisition of new facilities and had at least hinted at a change on its part from a conservative to a volume sales policy. As then presented, many of these acquisitions and changes occurred prior to 1939 and were "tied to" petitioner's change from Ford to Chevrolet in the model year of 1934 or 1935. On May 19, 1949, they were represented as flowing from taxpayer's having become the exclusive Chevrolet dealer in its area. It becomes clear from the above that taxpayer's claims as to acquisitions, remodelings, and change to a volume sales policy are not primary claims of change in the character of the business but that the primary claim was originally that of change from Ford to Chevrolet and, later and after the statute had run, that of having become the exclusive Chevrolet dealer in the area, and that the taxpayer's presentations of its acquisitions, remodelings, and change to a volume sales policy are secondary and in the nature of a specification of results naturally following and flowing from primary or fundamental change.

The protests of May 24 and 25, 1948, did not and were not intended to introduce any matters related to the exclusive dealership. This is conclusively shown by the fact that nothing was mentioned with respect thereto at the conference of August 12, 1948, some 3 months later.

There is nothing in the record before us to show that at any time prior to May 19, 1949, petitioner ever took the position that the ex-

clusive dealership it first obtained in 1939 justified relief under section 722 (b) (4). In fact, so far as that record shows, petitioner did not, prior to that date, inform respondent that such change in its competitive position had ever occurred, or make any statement upon the basis of which respondent could inform himself of such a change.

In its original timely claim the taxpayer presented one specific and one general ground for relief. The Supreme Court has dealt with a surprisingly similar factual situation in *United States* v. *Andrews*, 302 U. S. 517, in which case the taxpayer's claim was for a deductible loss on the ground that her holdings in two corporations had become worthless. After such specification, the taxpayer added the language: "or any greater sum which (may) be ascertained to be due." In holding that a later amendment, making claim as to a third stock, constituted an entirely new claim which had become barred by the statute of limitations, the Court said at page 524:

The claim here was not general but specific. It did not assert generally that income, gross or net, had been overappraised or, generally, that the taxpayer was entitled to deductions not taken or granted. On the contrary, it pointed to two specific items of deduction which had not been taken and to which the taxpayer claimed to be entitled. It stated that during the taxable year the taxpayer's holdings of stock in two named corporations had become worthless, entailing a deductible loss of $995. While the claim added the phrase that the taxpayer claimed the sum named, *or any greater sum which might be ascertained to be due*, this did not call upon the Commissioner to make a complete reaudit of the taxpayer's return. The fact that he might have done so is immaterial. He could have acted on the claim, as apparently he did, by investigating the affairs of the two corporations. It was ascertained that litigation was in process upon the outcome of which would depend a decision as to alleged worthlessness of some of the shares in question. He, therefore, naturally postponed action on the claim until the termination of that litigation. While matters were in this posture, and after the period of limitation had expired, the respondent presented a so-called amendment of her claim having no relation whatever to the items set forth in the original claim, but dealing with a wholly distinct item of $36,750 reported as dividends received and asking that it be eliminated from that category and that the transaction be reclassified as capital gain upon a basis which would result in a reduction of tax by some $6,000. This is not a case where the Commissioner waived the regulation with respect to the particularity with which the grounds of the claim must be set forth. There was no need for him to do so. The claim was not general like that in the *Memphis Cotton Oil* case and the others following in its train. It was as specific as it could be made and pointed unerringly to the items the Commissioner must consider. It called for no general audit of the taxpayer's affairs and apparently none was made. An investigation of the items designated could not have the least relation to that attempted to be opened in the untimely amendment. The respondent urges that these considerations are of no legal significance, since the claim not only called for redress of a specified grievance but demanded general relief as well. She insists we have likened a claim for refund to an action for money had and received and have required the Commissioner to accept and act upon a bill of particulars furnished him before actual rejection of the claim although the period of limitation has expired. But,

as we said in *United States* v. *Henry Prentiss & Co., supra*, p. 84, "This does not mean that a pleader who abandons the common count and states the particular facts out of which his grievance has arisen retains unfettered freedom to change the statement at his pleasure."

Were it not for the presence in the original claim of the demand for refund of *any other or greater sum which might be found due the taxpayer*, we think it could not even be suggested that the claim was a general one for money, had and received. Save for that clause the demand was of a specific amount based upon a specific transaction. Whether adjudication in strict analogy to the rules of pleading would permit the amendment we need not determine for the necessities and realities of administrative procedure preclude any such result. *United States* v. *Henry Prentiss & Co., supra*, p. 85. *The very specification of the items of complaint would tend to confine the investigation to those items * * *.* [Emphasis added.]

Petitioner's position that the matter of the exclusive franchise constituted merely new or additional evidence (of change in character or operation of the business) and not a new ground for relief is untenable. Paragraph 5 of the stipulation of facts refers to "the ground of change in product under (b) (4)." We are at a loss to understand why the acquisition of an exclusive dealership is not similarly a "ground." And the other matters cited in the letter of August 12, 1949, i. e., the change to volume sales and expansion of facilities, all in 1939, are manifestly auxiliary to the exclusive dealership rather than separate grounds for relief.

The foregoing letter states that those "significant changes * * * were responsible for taxpayer's increased profits in the excess profits years." That which would tend to prove that those changes occurred, and that they had the claimed effect upon earnings, constitutes evidence. The changes themselves are not evidence, but merely a ground or basis upon which relief under section 722 (b) (4), given proper supporting evidence, may be granted. The assertion of this ground by petitioner was not the introduction or offer of evidence (apparently no evidence was offered at that time), but merely the assertion of a new and by then barred ground for relief.

Had petitioner in its original application failed to state any specific basis for relief under section 722 (b) (4), that claim would still have satisfied the statute. It would clearly violate respondent's regulations, but that defect can be waived, and until respondent chooses for that reason to reject the claim, it can be cured by amendment. Thus, a broad, nondescriptive claim could well have constituted the basis for an amendment in 1949 introducing specifically the matters then raised for the first time. This petitioner, however, chose in its original application to rely upon the specific ground of change in product, and cannot now shift its position.

It is possible to read certain opinions of this Court as holding in effect that respondent may in some circumstances so act as to preclude

himself from later pleading the statute of limitations in bar of a purported amendment to a timely original claim. Cf. *Martin Weiner Corp.*, 26 T. C. 128; *Hydraulic Press Manufacturing Co.*, 27 T. C. 278; *Wilmington Gasoline Corporation*, 27 T. C. 500; *Eisenstadt Manufacturing Co.*, 28 T. C. 221. In view of the present record, we need express no opinion of the soundness of any such doctrine, as we do not here reach that question.

In the foregoing cases, respondent continued to treat the matters contained in the purported amendments as valid, timely claims, properly before him for consideration on the merits, long after he had before him facts which fully apprised him of any variance between such matters and those set forth in the original claims. In the instant proceeding, there is no evidence of such conduct. In fact, the record before us shows the contrary to be true. Respondent immediately took the position that the matters first raised at the conference of May 19, 1949, were new, and investigated only until it became apparent that they constituted a new and untimely ground for relief under section 722 (b) (4). At that point respondent refused to pursue the merits further, informing petitioner of the same statutory defect which he has pleaded here.

Petitioner has stipulated that if the statutory bar applies, respondent's determination is correct. In view of the foregoing,

*Decision will be entered for the respondent.*

Reviewed by the Special Division.