BARTH SMELTING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 35819. Filed August 18, 1958.

· *Philip A. Brenner, Esq.*, for the petitioner.
*Arnold I. Weber, Esq.*, for the respondent.

MULRONEY, *Judge:* The respondent disallowed petitioner's claims for relief from excess profits tax under sections 722 (a) and 722 (b) (4) of the Internal Revenue Code of 1939 for the fiscal years ended September 30, 1942 through 1946. The excess profits taxes involved are as follows:

| Taxable year ended September 30 | Excess profits tax |
|---|---|
| 1942 | $838. 33 |
| 1943 | 126, 215. 51 |
| 1944 | 225, 308. 27 |
| 1945 | 84, 521. 55 |
| 1946 | 12, 504. 08 |

Included in these amounts are the deficiencies in excess profits tax determined by the respondent in his notice of disallowance under date of April 25, 1951, in the amounts of $47,886.18 and $42,269.05 for the fiscal years ended September 30, 1943 and 1944, respectively. Respondent also determined a deficiency in declared value excess-profits tax of $1,960.43 for the fiscal year ended September 30, 1943, and an overassessment of $152.70 for the fiscal year ended September 30, 1942.

The issues are whether petitioner was entitled to section 722 (b) (4) relief because of commencing business during the base period and whether there was a change in the capacity for production or operation of petitioner's business consummated during a taxable year ended after December 31, 1939, as a result of a course of action to which it was committed prior to January 1, 1940, within the provisions of section 722 (b) (4), I. R. C. 1939.

### FINDINGS OF FACT.

Some of the facts were stipulated and such facts are found accordingly.

Otto Barth and his two brothers, Lazare and Ernest, formed three corporations for the purpose of engaging in what might broadly be termed the metals business. Barth Metals Co., Inc., was formed under the laws of the State of New York on February 4, 1926. Barth Smelting Corporation, petitioner here, was formed under the laws of the State of New York on September 29, 1937. Barth Smelting & Refining Works, Inc., was formed under the laws of the State of New Jersey on July 18, 1941. It will be simpler to call these three corporations Barth Metals, Barth Smelting or petitioner, and Barth Refining. All of the common stock of Barth Metals and Barth Smelting was owned by the Barth brothers except for a few shares of petitioner corporation which were owned by other persons in 1938.

The only business Barth Metals and petitioner ever engaged in was that of jobbing nonferrous scrap metals dealing in industrial scrap metal business, or securing the smelting of its nonferrous scrap metals into nonferrous ingots and nonferrous alloy ingots and selling them to the consuming industry. These corporations, in the years prior to 1941, secured their ingots by a toll arrangement with the Coleman Smelting & Refining Company (hereinafter called Coleman), which means the corporations would supply the scrap and Coleman would make the scrap into the ingots on a fee basis. Cole-

man also prepared some of this scrap for petitioner for industrial use.

Petitioner was formed by the Barths in order to get into the production end of scrap metal ingots and alloy ingots as the toll system with Coleman was not very satisfactory. However, the toll method previously outlined was continued while the incorporators of petitioner looked around for a smelting plant to buy that would be suitable for the operation they wanted to conduct with petitioner corporation. They and others acting for them or for petitioner inspected several plants. They were still looking for a plant to buy in 1940 and it was not until May 16, 1941, that petitioner entered into a contract to purchase a plant in Newark, New Jersey, from the General Lead Batteries Company, its owner, deed to be delivered July 31, 1941.

At this time the Barths were advised by an official of the City of Newark that because of the New Jersey personal property tax law, they would benefit by forming a New Jersey corporation to operate the facilities in Newark. On July 18, 1941, Barth Smelting & Refining Works, Inc., was incorporated under the laws of the State of New Jersey with an authorized capital stock of 2,000 shares of preferred, $100 par value, and 200 shares of voting common without nominal or par value. Ten shares were issued as qualifying shares, and, as of September 30, 1942, the balance of the outstanding stockholdings in Barth Refining were as follows:

|  | Otto Barth | Lazare Barth | Ernest Barth | Hugh Simon |
|---|---|---|---|---|
| Common | 40 | 22 | 22 | 16 |
| Preferred | 400 | 220 | 220 | 160 |

On July 29, 1941, the petitioner assigned to Barth Refining all of its right, title, and interest in and to the above contract of sale and authorized General Lead Batteries Company to deliver its deed to the plant in Newark directly to Barth Refining.

Barth Refining, after the completion of the plant facilities, assumed the smelting of ingots for petitioner which had been done previously by the Coleman plant. Petitioner retained title to the raw materials, paying a fee to Barth Refining for the smelting under contract. The fee was fixed at a level sufficient for Barth Refining to amortize its plant, machinery, and equipment and to pay dividends on its preferred stock.

Barth Metals, Barth Smelting, and Barth Refining continued in existence as separate corporate entities from the dates of their incorporation through the taxable years in issue, all actively engaged in business and filing separate tax returns during the base period and the taxable years in issue.

Gross sales of Barth Metals, as reported in its tax returns for the calendar years 1933 through 1945, were as follows:

| | | | |
|---|---|---|---|
| 1933 | $213,779.76 | 1940 | $220,164.97 |
| 1934 | 232,610.20 | 1941 | 169,115.53 |
| 1935 | 291,733.61 | 1942 | 149,018.88 |
| 1936 | 546,343.25 | 1943 | 233,131.76 |
| 1937 | 985,173.69 | 1944 | 241,725.88 |
| 1938 | 224,830.48 | 1945 | 377,533.45 |
| 1939 | 279,139.07 | | |

Gross sales of petitioner as reported in its tax returns for the fiscal years ended September 30, 1938, through September 30, 1946, were as follows:

| | | | |
|---|---|---|---|
| 1938 | $304,350.08 | 1943 | $3,530,964.12 |
| 1939 | 464,951.42 | 1944 | 5,417,789.71 |
| 1940 | 687,691.14 | 1945 | 4,539,563.18 |
| 1941 | 1,293,751.54 | 1946 | 3,992,424.99 |
| 1942 | 1,587,933.58 | | |

Gross receipts of Barth Refining, as reported in its tax returns for the fiscal years ended June 30, 1942 through 1945, were as follows:

| | |
|---|---|
| 1942 | $121,626.04 |
| 1943 | 376,793.19 |
| 1944 | 562,364.96 |
| 1945 | 623,761.22 |

The excess profits net income of the petitioner, under the invested capital method as adjusted by revenue agents' reports during the years in issue, was as follows:

| Year ended September 30 | Excess profits net income |
|---|---|
| 1942 | $19,654.94 |
| 1943 | 182,490.09 |
| 1944 | 309,146.68 |
| 1945 | 131,146.83 |
| 1946 | 92,963.39 |

The excess profits credits of the petitioner, under the invested capital method as adjusted by the revenue agents' reports during the years in issue, were as follows:

| Year ended September 30 | Excess profits credit |
|---|---|
| 1942 | $12,939.28 |
| 1943 | 14,747.26 |
| 1944 | 16,098.39 |
| 1945 | 22,291.22 |
| 1946 | 24,941.68 |

Petitioner filed applications for relief under section 722 for the fiscal years ending September 30, 1942, through September 30, 1946. In schedule B of these applications petitioner checked item 4 as the reason why it claimed its excess profits tax was excessive and discriminatory, which was to the effect that petitioner's business com-

menced or there was a change in the character of its business immediately prior to or during the base period. Petitioner submitted information, purporting to support these reasons, that it had commenced business on October 8, 1937, and that there was a change in petitioner's capacity for production or operation consummated during a taxable year ending after December 31, 1939, as a result of a course of action to which petitioner was committed prior to January 1, 1940. Petitioner also filed claims for refund for the years September 30, 1942, 1943, and 1944. These claims were protective in nature and they did not furnish any further information relative to petitioner's applications for relief under section 722. On April 25, 1951, the respondent denied these claims for relief made by the petitioner, disallowed the claims for refund, and determined the deficiencies and overassessments, previously stated.

OPINION.

Petitioner argues that its average base period net income is an inadequate standard of normal earnings because it changed the character of its business during the base period within the meaning of section 722 (b) (4), I. R. C. 1939.[1]

Section 722 (b) (4) provides, "Any change in the capacity for production or operation of the business consummated during any taxable year ending after December 31, 1939, as a result of a course of action to which the taxpayer was committed prior to January 1, 1940, * * * shall be deemed to be a change on December 31, 1939, in the character of the business." Petitioner contends that it was committed to purchase the smelting plant, which was actually purchased in mid-1941 (by another corporation), prior to January 1, 1940, and that consequently it comes within the commitment provisions of the relief section above.

The respondent, in Regulations 112, section 35.722-3 (d) (5), has specified that "a commitment may be proved by a contract for the construction, purchase, or other acquisition of facilities resulting in such change, by the expenditure of money in the commencement of the desired change, by the institution of legal action looking toward such change, or by any other change in position unequivocally establishing the intent to make the change and commitment to a course of action leading to such change." See also E. P. C. 15, 1947-1 C. B. 89, amending Bulletin on Section 722, p. 58: "Progress to the point where the taxpayer could not withdraw without substantial detriment may be given substantial weight in determining whether or not taxpayer has committed itself * * *. On the other hand, commitment

---

[1] All section references are to the Internal Revenue Code of 1939, as amended, unless otherwise noted.

claims are not to be rejected solely on the ground that taxpayers which have otherwise complied with all of the essentials in commitment cases may, nevertheless, be in a position where they might have withdrawn without substantial detriment prior to January 1, 1940."

Nothing in the record indicates that the petitioner itself was committed to any course of action prior to January 1, 1940, within the meaning of the section. The Barths, together with a man named Simon, did manifest some desire to go into the smelting business. There were discussions over several years, but mostly exploratory in nature. At various times the parties, in their individual capacity, did look at some plants in the metropolitan area and they incurred some expenses in their search for a plant, but as a rule, their expenses were their own. At least the books of petitioner do not show the payment of any such expenses. There was no fixed idea as to the exact nature of the plant or facilities sought by the parties. Undoubtedly, the Barths and Simon sensed the possibilities of the smelting business but their plans, as far as the record shows, at no time in the base period took any fixed form. By the end of the base period the parties still were engaged in a search for a plant or facilities which would strike them as suitable for the smelting venture. We do not consider such a search for a profitable business opportunity as a commitment within the intendment of section 722 (b) (4). As we pointed out in *Robinson Terminal Warehouse Corporation,* 19 T. C. 1185, at 1191, "something more than hope, desire, and expectation is needed to demonstrate a commitment under section 722 (b) (4). A definite plan, together with action taken on the strength of such plan, must be shown."

Petitioner makes an argument that there was a contract between all of petitioner's promoters (Barth brothers and Simon) that they engage in the smelting business and petitioner was obligated to carry out this contract by reason of the application of the general rule as to liability of a corporation for promoters' contracts. By this reasoning petitioner argues the petitioner was committed to buy a plant. There is no merit in the argument. The contract, which petitioner states was oral, was no more than the usual agreement between promoters, present in every case where promoters decide to launch a business enterprise by means of a corporate entity. The rule petitioner cites has no application to such agreements between promoters. That rule is applicable to obligate the corporation for the promoters' preincorporation contracts entered into by the promoters in behalf of the corporation they are forming. It has no application to render the corporation liable for contracts entered into between the promoters for individual benefits.

We hold, on the facts of this case, that the petitioner was not committed to any course of action prior to January 1, 1940, within the meaning of section 722 (b) (4).

The statute requires this commitment (here, under petitioner's argument, that it buy a plant) be consummated during any taxable year ending after December 31, 1939. Petitioner never did buy a plant. The plant was purchased and operated by Barth Refining, a corporation distinct and apart from the petitioner. Petitioner cannot be said to have changed the character of its business through the purchase of a plant by another corporation. *Irwin B. Schwabe Co.*, 12 T. C. 606. Petitioner agrees that the two corporations are to be treated as separate entities for tax purposes under the authority of many decisions of this and other courts. Petitioner merely states that, for the purpose of this case, Barth Refining should be treated as the operating or producing division of petitioner's scope of operation. No authority is cited for petitioner's position, and, in fact, no argument advanced in support of the mere statement that the entity of Barth Refining should be ignored.

It is clearly apparent from this record that petitioner failed to establish either commitment or consummation by petitioner and therefore we hold petitioner not entitled to any relief under the provisions of section 722 (b) (4) by reason of a change in the capacity for production as a result of a commitment before and consummation after the end of the base years.

Petitioner makes a short argument that it is entitled to relief on the ground that it commenced business during the base period, in 1937, and that it did not reach, by the end of the base period, the earning level which it would have reached if it had commenced business 2 years earlier. It is not enough, however, for petitioner to show that it commenced business during the base period. *Union Parts Mfg. Co.*, 24 T. C. 775. To obtain relief the petitioner must show that because of this incorporation the actual average base period net income is an inadequate standard of normal earnings. Persuasive reasons, supported by adequate evidence, must be shown by the petitioner in order to reconstruct base period net income under the "pushback" rule. *Stonhard Co.*, 13 T. C. 790. We have examined the record and are not convinced that there would have been an improvement in petitioner's earnings if it had commenced operation 2 years earlier. Petitioner's excess profits credit under the invested capital method during the years before us ranged from $12,939.28 in the fiscal year 1942 to $24,941.68 in the fiscal year 1946. To obtain relief under section 722, the petitioner must show that its constructive earnings figure would exceed these credits. Petitioner has not done so. When the petitioner commenced business in 1937 Otto Barth had been active, through

Barth Metals, in the jobbing field since 1926, and even before that he had been active in the metals field in one capacity or another. It was a field in which Otto Barth was thoroughly versed and we do not see how any argument can be made that 2 additional years of experience would have any material effect on the petitioner's earnings record. Long, previous experience in a similar field is a factor which we can consider. *Pabst Air Conditioning Corporation*, 14 T. C. 427. Barth Metals had been in business since 1926 and in 1937 the petitioner was formed. Petitioner's activities for the rest of the base period were, for the most part, similar to those of Barth Metals. In fact, an examination of the gross sales of Barth Metals and the petitioner during the years 1936 through 1940 reveals graphically that petitioner's activities did little more than decrease the sales of Barth Metals:

| Year | Barth Metals gross sales | Barth Smelting gross sales | Combined gross sales |
|------|-------------------------|---------------------------|---------------------|
| 1936 | $546,343 | | $546,343 |
| 1937 | 985,173 | | 985,173 |
| 1938 | 224,830 | $304,350 | 529,180 |
| 1939 | 279,139 | 464,951 | 744,090 |
| 1940 | 220,164 | 687,691 | 907,855 |

Furthermore, an examination of the gross sales of the petitioner does not indicate any growth which would indicate that petitioner's business, if commenced 2 years earlier, would have produced an earnings record during the base period which would afford it a greater credit than the one it already has. Any growth indicated in the gross sales figures in 1939, that is, toward the end of the base period, was clearly the result of an upward economic trend in the field of nonferrous metals. This is indicated by the Federal Reserve Board index of nonferrous metals as well as by other evidence in the record. We hold that the petitioner is not entitled to section 722 relief on the ground that average base period net income is an inadequate standard of normal earnings because it commenced business during the base period.

Petitioner invites us to search the record and see if it is entitled to relief under other provisions of section 722 (b) (4), and if so, grant it any relief which this Court may deem proper. This we cannot do. In its application for relief under section 722, petitioner sets forth as ground for 722 (b) (4) relief only commencement of business in the base years and change in capacity for production or operation consummated during a taxable year ending after December 31, 1939, as a result of a course of action to which petitioner was committed prior to January 1, 1940. Petitioner's brief is confined to a

discussion of these contentions. We will consider no other. *Burwell Motor Co.*, 29 T. C. 224; *Blum Folding Paper Box Co.*, 4 T. C. 795. Reviewed by the Special Division.

*Decision will be entered under Rule 50.*