# UNITED STATES v. FACTORS & FINANCE CO.

No. 141.   Argued December 8, 1932.—Decided January 9, 1933.

*Assistant Attorney General Rugg,* with whom *Solicitor General Thacher* and *Messrs. Whitney North Seymour,*

*George H. Foster, Bradley B. Gilman,* and *Wm. H. Riley, Jr.,* were on the brief, for the United States.

*Mr. J. Gilmer Korner, Jr.,* for respondent.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The suit is by a taxpayer to recover $19,995.44, with interest, an overpayment of income and profits tax. Here, as in other cases decided at this session, the judgment stands or falls according to our determination of the time within which a notice of a claim for refund is subject to amendment.

On June 15, 1918, respondent, a corporation, filed an income and profits tax return for the calendar year ending December 31, 1917, and made payment of the tax in accordance therewith. The amount of the payment was $177,338.72. In May, 1920, the Commissioner made an assessment of an additional tax for 1917 in the sum of $267.32, which was paid by the respondent on June 29, 1920. In August, 1920, the Commissioner made another assessment of an additional tax for the same year in the sum of $25,327.91. On account of this additional tax respondent on October 4, 1920 made a payment of $9,388.57, and in the same month filed a claim for the abatement of $15,933.34, the amount of the unpaid balance. In connection with this claim for abatement the Commissioner made an order on May 6, 1921, for a full examination of the affairs of the taxpayer by an agent of the Bureau of Internal Revenue. Such an examination was made, and a report by the examiner was filed with his superior.

In February, 1923, the audit by the Commissioner was still incomplete, and the amount of the assessment not finally determined. The taxpayer was fearful, so it seems, that the time might go by within which claims for overpayments were due under the law. To forestall any

default it lodged with the Commissioner on February 27, 1923, a claim for $177,606.04 in terms of sweeping generality. It stated in so doing that there had been at that time no final audit of its return or assessment of the tax, and that the purpose of the notice was to save the taxpayer's rights under the applicable statutes " and to permit the Commissioner to refund to deponent any excess paid over taxes actually found to ,be due." There was no statement in this notice as to the grounds of the claim that the payments were excessive. No such statement was made until July 17, 1925, when there was filed with the Commissioner an amended claim for refund, setting forth the grounds in detail. In this amended claim the taxpayer explains the reasons why a special assessment should be made in accordance with § 210 of the Revenue Act of 1917 (c. 63, 40 Stat. 300, 307), permitting that procedure where the amount of the tax cannot otherwise be determined with accuracy or justice. A copy of that section is quoted in the margin.*

---

* Section 210. That if the Secretary of the Treasury is unable in any case satisfactorily to determine the invested capital, the amount of the deduction shall be the sum of (1) an amount equal to the same proportion of the net income of the trade or business received during the taxable year as the proportion which the average deduction (determined in the same manner as provided in section two hundred and three, without including the $3,000 or $6.000 therein referred to) for the same calendar year of representative corporations, partnerships, and individuals, engaged in a like or similar trade or business, bears to the total net income of the trade or business received by such corporations, partnerships, and individuals, plus (2) in the case of a domestic corporation $3,000, and in the case of a domestic partnership or a citizen or resident of the United States, $6,000.

For the purpose of this section the proportion between the deduction and the net income in each trade or business shall be determined by the Commissioner of Internal Revenue in accordance with regulations prescribed by him, with the approval of the Secretary of the Treasury. In the case of a corporation or partnership which has fixed its own fiscal year, the proportion determined for the calendar year ending during such fiscal year shall be used.

In the interval between February, 1923 and July, 1927, there had been action by the Commissioner upon the claim for abatement which had been filed by the taxpayer in October, 1920. A claim for abatement, unlike a claim for refund, has relation to a tax assessed, but still unpaid. *Rock Island, A. & L. R. Co.* v. *United States,* 254 U. S. 141. The Commissioner declined to abate the whole amount of $15,933.34 withheld by the taxpayer, but did declare an overassessment of $3,293.89, leaving a balance of $12,639.45, with interest, then determined to be due. This balance the taxpayer discharged by payment to the Collector in November, 1923.

The claim for abatement had thus been disposed of, but no action had yet been taken upon the claim for refund. The Commissioner permitted this to slumber, without deciding or considering it, till after the filing of the amendment in July, 1925. Upon receipt of that amendment, or soon afterwards, he proceeded to a consideration of the claim upon the merits. There were hearings and rehearings at which the taxpayer gave evidence in support of its claim that its payments had been excessive and that there was need of a special assessment to arrive at a computation consistent with equity and justice. The Commissioner decided the merits of the controversy in favor of the taxpayer. He held that a case had been made out for a special assessment in accordance with § 210 of the Revenue Act of 1917. He held, after computing the tax accordingly, that there had been an overpayment of taxes in the sum of $32,634.89. He held, however, that the notice of claim of February 27, 1923, was defective for failure to state the grounds of the taxpayer's objections; that the notice of July 17, 1925, was without avail as an amendment in respect of overpayments made in 1918 and 1920, since as to these it was too late; that it was good as an original claim for the refund of the overpayment made in November, 1923;

and hence that of the total overpayments of $32,634.89 there should be a refund of $12,639.45, the 1923 instalment, with $3,028.24, interest paid thereon, and that as to the residue of the overpayments, $19,995.44, a refund should be refused. A very different case would be here if the Commissioner had ruled that no adequate reason for a special assessment had been established, and had refused relief upon that ground. We do not say, that a justiciable controversy would then have arisen for a court. *Williamsport Co.* v. *United States,* 277 U. S. 551, 562; *United States* v. *Henry Prentiss & Co.,* decided herewith, *ante,* p. 73. What he did was to find that there was need for a special method, that the application of such a method would reduce the tax by a stated sum, but that because of defects in the form of the claimant's notice, there could be relief only in part. For the amount thus disallowed the taxpayer brought suit in the Court of Claims which overruled the action of the Commissioner and gave judgment accordingly. 56 F. (2d) 902; 73 Ct. Cls. 707. A writ of certiorari brings the case here.

We are holding in *United States* v. *Memphis Oil Co., ante,* p. 62, that a general claim for refund, not specifying grounds, is subject to amendment until final rejection irrespective of a limitation running in the interval. We are holding in *United States* v. *Henry Prentiss & Co., ante,* p. 73, that under the Revenue Act of 1918 a claim specifying as the sole ground for relief the necessity for a special assessment by reason of anomalous conditions prevailing in the claimant's business may not be turned by amendment into one for the revision of an assessment by increasing the value of real estate included in invested capital. The present case falls midway, or near to that, between the other two. Here the taxpayer did not specify any ground in the claim first presented, but offered an amendment afterwards setting forth the reasons why the assessment should be special.

The case is a close one, giving fair opportunity for argument either way, but we think the better reasons uphold the privilege of amendment.

1. The conclusion favorable to the privilege has support in the analogies of pleadings in a law suit. The claim in its original form is one for money had and received to the use of the respondent after the manner of the common counts in a suit at common law. It does not specify a particular state of facts, as did the claim in the *Prentiss* case, abandoning all others. It charges overpayment generally, and thus brings within its range whatever facts reside in the domain of equity and conscience.

2. The conclusion thus supported by the analogy of pleadings is not inconsistent with the necessities of administrative practice.

This is not a case where the grounds injected by the amendment have already been abandoned by agreement tacit or express. Such abandonment and agreement there was in the *Prentiss* case, the claimant seeking at the beginning the privilege of the special method of assessment and reverting thereafter to another ground of challenge which by implication, if not expressly, it had promised to renounce. This is a case where the claimant has left the grounds of challenge open, and where the Bureau has itself to blame for not insisting at the outset upon a full disclosure of the grievance.

There are other elements of difference, however, besides the presence or absence of agreement, that divide the *Prentiss* case from this one. These other elements of difference are even more important, for the Prentiss ruling would have been the same if agreement had been absent. When the two cases are considered in the light of administrative practice a distinction is to be noted at the outset between the nature of a special assessment under the Revenue Act of 1918, § 327 (d), and the nature of such an assessment under the Act of 1917,

§ 210. The application in the *Prentiss* case was made under § 327 (d) of the Act of 1918, whereby the taxpayer, ignoring a possible challenge of the computation of invested capital, plants itself upon the ground of a variance between the statutory definition and the economic concept, and calls upon the Commissioner to exercise a dispensing power given to him, in circumstances of hardship, by the provisions of the statute. In an application for special relief under § 210 of the Act of 1917, the grounds of challenge are very different if the letter of the section is the measure of relief thereunder. The value of the invested capital under the statutory definition (Revenue Act of 1917, § 207) is not put aside in such circumstances as an irrelevant inquiry. On the contrary it becomes the very essence of the claim by the taxpayer that there must be a recourse to another method. Under § 210 of the Act of 1917, the special method is not permissible unless " the Secretary of the Treasury is unable in any case satisfactorily to determine the invested capital." In brief, § 210 of the Act of 1917 is the precursor of § 327 (a) of the Act of 1918, and is not at all the analogue of § 327 (d). Cf. *Williamsport Co.* v. *United States,* 277 U. S. 551, 558.

We are not forgetful of the fact that by the regulations of the Commissioner and the practice of his Bureau, the distinction between the two acts has been obscured, if not destroyed. Relief has been granted under the Act of 1917 as if its provisions were the same as those of the act adopted later. Treasury Regulations 41, 1918, Art. 52; cf. R. H. Montgomery, Excess Profits Tax Assessment (1920), pp. 242, 243. The validity of the regulations, if applied to proceedings under the Act of 1917, is a question not now before us. The practice, we may say in passing, has not been left unchallenged, but has been criticized in the Report of the Senate Committee for the Investigation of the Bureau of Internal Revenue. See

Report No. 27, Pt. I, pp. 214, 215, *et seq.*, 69th Congress, First Session, 1925–1926. Certain at all events it is that an appeal to the Commissioner to exercise his jurisdiction under § 210 of the Act of 1917 is not confined to the occasions stated in § 327 (d) of the Act of 1918, if indeed it covers them at all. It is at least broad enough to give notice that jurisdiction should be exercised in accordance with the letter of § 210, upon the ground, that is to say, of the inability of the Commissioner to arrive at a conclusion as to value satisfactory to himself. Under § 327 (d) of the Act of 1918, a special assessment is not ordered except on the motion of the taxpayer, setting forth the special reasons why the statutory definition is oppressive, and why another method should be adopted. Under § 210 of the Act of 1917, as under § 327 (a) of the Act of 1918, the Commissioner acts of his own motion whenever he is unable to satisfy himself that the valuation will be accurate if there is adherence to the statute.

This question, if no other, he must have considered and determined when a claim for refund was submitted by the taxpayer without specifying the grounds. *United States* v. *Memphis Oil Co., ante,* p. 62. This question, if no other, he must again have considered and determined when he certified to the taxpayer, after the claim had been amended and after submission of the evidence, that § 210 of the Act of 1917 supplied the applicable rule. It is a question that in last analysis is addressed to his own conscience, and in the absence of any evidence impeaching his conclusion his certificate of satisfaction or the contrary is binding on the courts.

The cumulative force of these administrative opportunities and these procedural analogies upholds the claim and the amendment.

The judgment of the Court of Claims is accordingly

*Affirmed.*