## NATIONAL PARK BANK OF NEW YORK v. UNITED STATES.

### No. 257.

Circuit Court of Appeals, Second Circuit.
May 8, 1933.

See, also, 33 F.(2d) 1006.

Barry, Wainwright, Thacher & Symmers, of New York City (Dallas S. Townsend, Horace L. Hawkins, and Gardner D. Howie, all of New York City, of counsel), for appellant.

George Z. Medalie, U. S. Atty., of New York City (Walter H. Schulman, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The original complaint was dismissed with leave to amend, and, as amended, set forth that the plaintiff paid in 1919 "income, war profits and excess war profits and excess profits taxes for the calendar year 1918" which exceeded the amount lawfully due by $968,-348.44. It was alleged that on March 15, 1923, a claim for refund was "duly and properly filed" within the time limited therefor; also that on March 7, 1923, the Commissioner of Internal Revenue notified the plaintiff by letter that a superficial examination of its income and profits tax returns for 1917 indicated a probable overassessment; called to its attention the fact that a claim for refund was a necessary prerequisite to any allowance; and suggested "that you file with the Collector of Internal Revenue for your District at an early date a blanket claim for refund for such amount as may be determined to be due upon final audit of your return." The claim for refund it filed March 15, 1923, was not only for 1917, but for 1918, and read:

"Claim for refund is hereby made for such amount as may later be determined after final audit of income and profits taxes paid by this Bank, for the years 1917 and 1918."

Lack of knowledge as to what amounts the Commissioner would determine as a result of audits then in process is alleged as the reason why the plaintiff "could not set forth any specific allegations in the claim."

The amended complaint continued in part as follows:

"Seventh: On information and belief, that said claim of the plaintiff was prepared and filed in exact conformity with the instructions contained in said letter of the Commissioner of Internal Revenue of March 7, 1923, and was held by said Commissioner to be a valid claim for the year 1917.

"That thereafter plaintiff supplemented and perfected its claim by setting out in detail the grounds upon which it was and is entitled to said refund.

"Upon information and belief that in so supplementing and perfecting its claim as stated herein, plaintiff followed the exact procedure established and approved by the Commissioner's office for making, filing, supplementing and perfecting said claims.

"On information and belief that said Commissioner's office has allowed claims and granted credits and refunds to other corporations based upon such claims and procedure as is alleged herein.

"Eighth: That this claim for refund was rejected, in so far as it applied to the calendar year 1918, by the Commissioner of Internal Revenue, in a letter dated August 21, 1926.

"Ninth: On information and belief that the Commissioner of Internal Revenue has wilfully, wrongfully and unlawfully refused and does wilfully, wrongfully and unlawfully refuse to act upon said claim for refund and/or to grant to plaintiff the said refund whereas the said Commissioner has acted and

does act upon similar claims and has granted and does grant refunds upon the same and/or similar grounds and upon like claims and applications to said Commissioner by other corporations similar to and representative of plaintiff.

"Tenth: On information and belief that the representative corporations referred to in paragraphs Ninth and Eleventh herein are similar to and representative of plaintiff within the meaning of sections 327 and 328 of the Revenue Act of 1918 (40 Stat. 1093).

"Eleventh: Upon information and belief that said Commissioner has wilfully, wrongfully and unlawfully discriminated and does wilfully, wrongfully and unlawfully discriminate against plaintiff, in that said Commissioner has refused and does refuse to accord and grant to plaintiff the relief and refund which the law requires the Commissioner to accord and grant to plaintiff and which the Commissioner has accorded and granted and does accord and grant to the corporations similar to and representative of plaintiff.

"Twelfth: On information and belief, that the plaintiff's excess profits and war profits taxes for the calendar year 1918 should be assessed under sections 327 and 328 of the Revenue Act of 1918. Plaintiff further alleges, on information and belief, that the Commissioner was at all times mentioned herein, and is now, unable to determine the invested capital of the plaintiff for the calendar year 1918, as provided in section 326 of the said act (40 Stat. 1092). On information and belief, that the Commissioner of Internal Revenue was and is required by section 327 of the Revenue Act of 1918, to assess the plaintiff's excess profits and war profits taxes under section 328 of the said act.

"Thirteenth: On information and belief, that owing to abnormal conditions affecting the capital and income of the plaintiff, its profits tax, if determined without giving effect to sections 327 and 328 of said act, works upon the plaintiff an exceptional hardship within the meaning of said act, which hardship is evidenced by gross disproportion between the tax computed without applying this section and the tax computed by referring to the representative corporations specified in section 328. That during all the times mentioned herein capital was an important income producing factor in the conduct of plaintiff's business. That plaintiff's statutory invested capital for the calendar year 1918 was determined by the Commissioner of Internal Revenue to be only $22,-

475,947.91, but that during that year the plaintiff used in the regular conduct of its business an average additional capital in the amount of $23,812,000, all of which was borrowed from the Federal Reserve Bank of New York as follows:

"An average of $12,250,000 was borrowed on plaintiff's direct notes payable.

"An average of $11,562,000 was borrowed on re-discount, making total of $23,812,000 borrowed capital used to produce income for the year 1918. That this borrowed capital was at all times during the year 1918 greater than the total statutory invested capital which was used to produce income but could not be considered under section 326 as statutory invested capital for computing the profits tax credits. That consequently a serious abnormal condition arose affecting the plaintiff's capital and the income produced therefrom.

"Fourteenth: That the total profits tax assessed against the plaintiff for the calendar year 1918 was more than thirty-five per cent (35%) of its taxable income for said year, whereas, on information and belief, that other corporations similar to and representative of plaintiff are taxed at a rate of approximately 7½% of their taxable income."

The government moved to dismiss the amended complaint (1) for lack of jurisdiction; (2) because the claim for refund was insufficient; (3) because the claim for refund was not perfected before the claim was barred by the statute of limitations; and (4) because no facts were pleaded to make possible a review of "the determination of the Commissioner of Internal Revenue in the matter of special assessment. * * *"

The District Court held that the amended complaint did not differ materially from the original complaint which had previously been dismissed, and granted the motion.

The claim for refund, filed by the plaintiff at the suggestion of the Commissioner, for the year 1917, is not involved, and that was the only taxable period for which a claim was invited. Certainly it may not be said that, when the plaintiff saw fit to include 1918 in its claim, it was entitled to any special consideration for that year because the Commissioner knew that the audit for 1917 had progressed far enough to show a probable overassessment for that taxable period. There is nothing to show that the Commissioner had any knowledge or notice of an overassessment for 1918. The plaintiff's

claim for that year had to be sufficient or, at least, to be amendable. While there is no allegation which shows in hæc verba the claim as amended, we take the seventh paragraph of the amended complaint to establish for present purposes that at some time before rejection the claim was amended. Perhaps the lack of certainty as to the nature of the amended claim makes the pleading objectionable, but we prefer to base our decision on something more substantial than a mere formal defect in the complaint.

■ It is not alleged that the refund claim was amended into a claim for a special assessment before the statute of limitations had run, but only that it was so amended before rejection on August 21, 1926, and the position of the plaintiff is that it was then amendable in accord with United States v. Memphis Oil Co., 288 U. S. 62, 53 S. Ct. 278, 77 L. Ed. 619, and United States v. Factors & Finance Co., 288 U. S. 89, 53 S. Ct. 287, 77 L. Ed. 633, and our attention is called to United States v. Henry Prentiss & Co., 288 U. S. 73, 53 S. Ct. 283, 77 L. Ed. 626, and Bemis Bros. Bag Co. v. United States, 53 S. Ct. 454, 77 L. Ed. ——. The last case was decided March 13, 1933 and the others January 9, 1933. We can see no reason in view of the cases above cited why the original claim could not be amended at any time before rejection into a claim for a refund based on a special assessment. Moreover, while the taxpayer must apply for a special assessment under section 327 (d) of the 1918 act (United States v. Factors & Finance Co., supra; Bemis Bros. Bag Co. v. United States, supra), such a claim is not necessary for a special assessment under section 328 when the Commissioner acts under any of the other subdivisions of section 327. The very fact that the claim was uncertain in the first instance relieves the plaintiff of the difficulty encountered in the Prentiss Case, supra, of trying to recover what had been relinquished by filing a claim inconsistent with the position sought to be taken by amendment. Nor does this same colorless character of the original claim prevent its ever having been a claim at all and create a bar to amendment quite as potent. While it may have originally been so indefinite and lacking in the requirements of the regulations made under the statute to govern the content of refund claims that the Commissioner would have been justified in rejecting it, he held it without taking action until it had been amended into what we understand is to be taken for present purposes as a sufficient application for a special assessment and refund. This amendment was timely. United States v. Memphis Oil Co., supra.

■ Yet the necessity to allege a cause of action rests upon the plaintiff, and is not fulfilled by alleging that it has met a condition precedent to maintaining a suit at law to recover an overpayment of taxes by filing a claim for refund. Having complied with that condition, it merely has the same rights it would have had if no claim for refund had been required to enable it to sue. It must allege facts which show that it had a cause of action based upon an actual overpayment of taxes when it brought this suit. The nearest approach to that is the allegation of facts which at most show that the Commissioner should have given it the benefit of a special assessment, and that, if he had done so, he would have found that its tax computed on such a basis had been overpaid. However appealing what may be called the equities of the plaintiff's position may be, the blunt fact remains that no special assessment has been made by the Commissioner, and without a computation of the tax on that basis nothing can be found due the plaintiff. We certainly have no power to compel the Commissioner to make such an assessment, and express no opinion as to what remedy, if any, the plaintiff may have in that regard. Presumably a court which has jurisdiction may review his determination for fraud or other irregularities. See Williamsport Co. v. United States, 277 U. S. 551, 562, 48 S. Ct. 587, 72 L. Ed. 985. Not having alleged that the Commissioner has made a special assessment which does, or at least would in the absence of fraud or other irregularities, show an overpayment, the plaintiff has alleged no cause of action against the United States. Nor had the District Court power to determine that the Commissioner should have made a special assessment, proceed to make one itself, and enter judgment. Williamsport Co. v. United States, supra.

Judgment affirmed.