Walter M. Sheldon and Laura Sheldon v. Commissioner.
Sheldon v. Commissioner
Docket No. 71622.
United States Tax Court
T.C. Memo 1961-44; 1961 Tax Ct. Memo LEXIS 307; 20 T.C.M. (CCH) 241; T.C.M. (RIA) 61044; February 21, 1961
*307 1. Expenses for petitioner's wife in accompanying him to conventions were personal in nature and served no bona fide business purpose. 2. Determined from the facts that petitioners intended to occupy a residence as their home and that, therefore, certain expenditures made in connection with it were personal and nondeductible. 3. Expenses in locating the body of petitioner Laura Sheldon's son in Venezuela were personal in nature and were not made with an expectation of repayment, but a small pre-existing debt was deductible as a nonbusiness bad debt. Thomas F. Pierce, Esq., 111 W. Washington St., Chicago, Ill., and James E. Whealan, Esq., for the petitioners. Arthur N. Nasser, Esq., for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined deficiencies in petitioners' income tax for the years 1953 and 1955 in the following amounts: Year
Deficiency
1953
$5,414.82
1955
1,704.34
The correctness of respondent's disallowance of the following deductions is presented for our determination: 1. Petitioners deducted the expenses incurred by petitioner Laura Sheldon in 1953 while accompanying her husband on his trips to convention meetings of *308 the National Association of Insurance Agents. 2. Petitioners deducted as a rental expense certain expenditures they made in 1953 respecting a residence owned by them. 3. In 1955 petitioners deducted, as a nonbusiness bad debt, a small amount owing from John C. Bryan, and their expenses incurred in locating his body and in causing its interment. Findings of Fact Some of the facts have been stipulated and are so found. (However, see footnote 1, infra.) Walter M. Sheldon, hereinafter referred to as petitioner, and Laura Sheldon are husband and wife residing in Hinsdale, Illinois. They filed timely joint Federal income tax returns for the calendar years 1953 and 1955 with the district director of internal revenue at Chicago, Illinois. 1. Wife's Expenses. Since 1919 and at all times herein relevant petitioner has been employed as an insurance agent by W. A. Alexander & Co., a nationwide general insurance firm, and at the time of the trial of this case he was the executive vice president, a director and a stockholder of that corporation. The National Association of Insurance Agents (NAIA) is a federated organization consisting of members of the various state organizations, and consisting *309 in 1952 of approximately 32,000 such members. At the annual convention of the NAIA held in Cleveland, Ohio, in September 1952, petitioner was elected president of that group for the year 1953. One of the duties of the president of the NAIA was to visit the various state organizations and participate in their functions and business affairs. During the year 1953 petitioner expended the following sums so that his wife might accompany him on trips he made in such capacity. Amount
Month
Place
Deducted
February
Washington, Baltimore,
New York
$320.07
April, May
Hollywood Beach, Flor-
ida, and Edgewater
Gulf, Miss.
320.98
June
San Francisco
353.73
September
Portland and Seattle
334.92
October
Washington and White
Sulphur Springs,
W. Va.
250.05
Laura Sheldon's presence had no connection with the basic meetings or conventions attended. She accompanied petitioner to assist him in carrying on that part of the conventions and meetings that was of a social nature, such as keeping the president's parlor open for entertainment, being his partner at dances and receptions, and generally performing the function of hostess. It would be unusual for the president of the NAIA to attend the various social functions unaccompanied *310 by his wife, and it is customary for the wife of the president to serve as his hostess. 2. Claimed Rental Expense. For several years prior to 1952 petitioner and his family were living in a 14-room house with an acre and a half of ground located at 106 East Eighth Street, Hinsdale, Illinois. By 1952 three of the four children who had resided with petitioners had married and gone, and consequently petitioner began to look for a smaller residence. On October 2, 1952, petitioner bought, for this purpose, a house located at 327 Oak Street, Hinsdale, Illinois, paying about $30,000 therefor. The estimated cost of desired repairs to and remodeling of this house was far in excess of what petitioner had anticipated spending, and he therefore rented it at a nominal rental on a month-to-month basis. Petitioner had anticipated spending an amount approximately equal to his cost on the Oak Street house, but when actual estimates were 50 percent higher than expected he delayed his plans to move. During the year 1952 petitioner listed the Eighth Street property for sale with a real estate broker. During 1953 an advantageous opportunity to sell this property arose, and it was sold on September 21, *311 1953. [1] During this same month the tenancy in the Oak Street property was terminated and thereafter petitioner expended the following amounts on such property: Date
Payee
Amount
9/12/53
M. S. Jones
$ 735.00
10/16/53
M. S. Jones
275.06
12/28/53
A. H. Viren & Sons
5,096.85
The Oak Street property remained vacant from September 1953 until March 1954, when petitioners physically occupied it as their home. The expenditures involved herein commenced after the month-to-month tenant had vacated, and were completed shortly before petitioners moved in. 3. Debt Owed by John C. Bryan and Expenditures Made in Recovering His Body. John C. Bryan, deceased, was the son of Laura Sheldon by a former marriage. In 1955 he was 28 years of age and unmarried, and had never been a member of petitioner's household. Prior to Bryan's death he had severed his employment in Caracas, Venezuela, with the Chicago Bridge and Iron Company in order to undertake an adventurous expedition in that locale with a companion. During the course of this expedition Bryan was drowned sometime during *312 the month of September 1955 at Angel Falls in Venezuela. At the time of his death Bryan owed petitioner $251.55 on a personal loan and his assets consisted of personal effects of no realizable value, and a bank balance of $53.99 in the National Bank of Sweetwater, Texas. Upon learning that his stepson was missing, petitioner contacted an assistant American consul in Caracas, Venezuela, and Brock Bradley, a friend of Bryan's in Venezuela, and during 1955 petitioner authorized and paid a total of about $2,700 in locating and interring Bryan's body. Bryan's body was recovered and interred in Venezuela. Petitioners claimed a deduction of $2,929.01 on their 1955 joint income tax return as a "Bad Debt - Estate of John C. Bryan, Deceased," which sum included the aforementioned $251.55 debt. Opinion 1. Wife's Expenses Attending Conventions. Petitioner contends that these expenses of $1,579.75 paid on behalf of his wife, Laura, during 1953 are deductible under section 23(a)(1)(A) [2] *313 of the Internal Revenue Code of 1939, [3] whereas respondent would have us deny the deduction pursuant to section 24(a)(1). [4]
The deductibility of the expenses of a wife in attending her husband's business meeting or convention requires a finding that she performed services necessary to the husband's trade or business, and not merely helpful thereto. L. L. Moorman, 26 T.C. 666 (1956). In that case the taxpayer's wife actually assisted him in his work while away from home, and was of additional help in entertaining dealers, but her expenses were *314 held to be personal. In the instant case, Laura performed only social functions and did not assist petitioner in his work at the meetings. Respondent's interpretation of and ruling upon this question were adopted by this Court in Alex Silverman, 28 T.C. 1061, 1064 (1957), where we said: It is well established that amounts expended by a taxpayer for the purpose of having his wife accompany him on a business trip where the wife's presence did not serve a bona fide business purpose represent nondeductible personal expenses under the provisions of section 24(a)(1), 1939 Code. Leland D. Webb, 1 B.T.A. 759; George W. Megeath, et al, 5 B.T.A. 1274, 1287; Walter Schmidt, 11 B.T.A. 1199; Regs. 118, sec. 39.24(a)-1, and sec. 39.23(a)-2; Rev. Rul. 55-57, 1955-1 C.B. 315. * * * See Rev. Rul. 56-168, 1956-1 C.B. 93; Ralph E. Duncan, 30 T.C. 386 (1958). In Allenberg Cotton Company, Inc. v. United States, - F. Supp. - (W.D. Tenn., November 25, 1960), the taxpayer was a diabetic who required constant attention, and his wife's expenses incurred upon their trip to world cotton markets were deductible. However, the court reaffirmed respondent's rulings and the tests of bona fide business purpose *315 and absence of a pleasure trip or vacation for the wife. The location of the trips taken by Laura seems to indicate that pleasure or vacation was a consideration in determining whether or not she was to accompany petitioner. Although there were 50 state associations, Laura seems to have visited primarily resort or tourist locations, all of which were a considerable distance from her Illinois home. This, together with petitioner's failure to show that Laura's social functions were necessary to his business, and his failure to seek or obtain reimbursement for her expenses from NAIA, leads us to conclude that the claimed expenses were personal and nondeductible. L. L. Moorman, supra; Rev. Rul. 55-57, 1955-1 C.B. 315. 2. Claimed Rental Expenses. Petitioner argues that the 1953 expenditure of $5,096.85 [5] *316 upon the Oak Street property was for repairs and therefore deductible under section 23(a)(2), [6] apparently on the theory that petitioner might again rent this property in the future. Respondent contends that the expenditure was personal and capital and properly disallowed under section 24(a), supra. We find it unnecessary to determine whether the expenditure was for repairs or capital improvements since the surrounding circumstances belie petitioner's argument in either event. The property was purchased as a residence, rented for a nominal sum month-to-month, and then the expenses were incurred after all rental activity had ceased. Most important of all, the work was commenced after petitioners had sold the house in which they were then living, and petitioners occupied the Oak Street property as their home almost immediately after the work was completed. We therefore conclude that these expenses were incurred in readying the Oak Street property for use as a personal residence, and that this property was not held for rental purposes after September 1953. Lafayette Page, 1 B.T.A. 400 (1925). *317 We therefore determine this issue for respondent. 3. Debt Owed by John C. Bryan and Expenditures Made in Recovering His Body. Petitioners contend that their expenditures incurred in 1955 in locating and interring Bryan's body gave rise to a quasi-contractual claim against Bryan's estate under Illinois law, and since all but $53.99 of this claim was worthless they are entitled to a nonbusiness bad debt deduction under section 166(d)(2) of the Internal Revenue Code of 1954. [7] Respondent argues that this also is a personal expenditure and nondeductible under section 262, the 1954 Code counterpart of section 24(a) of the 1939 Code. He also denies the existence of the requisite debtorcreditor relationship. It is clear that no deduction may be taken for an obligation worthless when acquired. Eckert v. Burnet, 283 U.S. 140 (1931). An obligation incurred without reasonable hope or expectation of repayment is not *318 a debt for tax purposes. First Nat. Bank & Trust Co. of Tulsa v. Jones, 143 F. 2d 652 (C.A. 10, 1944). This Court has held that the insolvency of the alleged debtor coupled with an absence of any indication of a future change from that status made the debt worthless when acquired. Walter J. Runyon, 8 T.C. 350 (1947). Petitioner has the burden of proving that the debt was not worthless when it was created. Fred A. Bihlmaier, 17 T.C. 620 (1951). Assuming Arguendo that petitioner did acquire a quasi-contractual claim against Bryan or his estate, [8] we nevertheless conclude that no debt was created within the purview of section 166. Petitioner testified to the best of his knowledge that Bryan never had any estate, that he was an adventurous character, and had no permanent job. We conclude that the expenditures made by petitioner with respect to the search for Bryan were not made with any hope or expectation of repayment either from Bryan, if alive, or from his estate. In addition, even if a valid debt arose, the expenses at issue are personal and nondeductible. The primary motivation for the inquiries was to discover what had happened *319 to Bryan. Petitioner wanted to alleviate his wife's grief by locating her son. We are convinced that no motives other than family ones prompted the expenditures involved. The claimed debt of $251.55 allegedly incurred by Bryan before his death stands on a different footing. Respondent contends that the only evidence of such debt is a personal letter from Bryan to petitioner dated January 1, 1954, indicating some indefinite indebtedness, and that this is insufficient to sustain petitioner's burden of proof. We think otherwise. Petitioner testified to the amount and existence of this debt at the time of Bryan's death and we have found such testimony credible and corroborated by the letter. Bryan was alive when the debt was created and we believe that petitioner expected that the money would be repaid. We conclude that petitioner has sustained his burden of proving the existence and validity of the $251.55 debt and that it is a proper deduction under section 166(d), supra. Decision will be entered under Rule 50. Footnotes
1. So stipulated. A further stipulation specifies the date February 9, 1954, but the earlier date was shown by petitioners in their 1953 return.↩
2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or Business Expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * * ↩
3. All references are to the 1939 Code unless otherwise indicated. ↩
4. SEC. 24. ITEMS NOT DEDUCTIBLE. (a) General Rule. - In computing net income no deduction shall in any case be allowed in respect of - (1) Personal, living, or family expenses, except extraordinary medical expenses deductible under section 23(x)↩; * * *
5. This is the figure claimed on brief. We assume that petitioner has conceded the other items. 6. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - * * *
(2) Non-Trade or Non-Business Expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.↩
7. SEC. 166. BAD DEBTS. (d) Nonbusiness Debts. * * *
(2) Nonbusiness Debt Defined. - For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than - (A) a debt created or acquired (as the case may be) in connection with a taxpayer's trade or business; or * * *↩
8. See 34 C.J.S. 137, note 64, and cases therein cited.↩