Abe and Sarah R. Brenner v. Commissioner.
Brenner v. Commissioner
Docket No. 5224-64.
United States Tax Court
T.C. Memo 1967-239; 1967 Tax Ct. Memo LEXIS 23; 26 T.C.M. (CCH) 1210; T.C.M. (RIA) 67239; November 28, 1967
David M. Scheffer and Nathan Wald, 80 Federal St., Boston, Mass., for the petitioners. Rufus E. Stetson, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined deficiencies in and additions to the income tax of petitioners for the following years in the following amounts: Addition to
tax under
Year
Tax
Sec. 6653(a) [1]
1959
$2,547.50
$127.38
1960
2,504.91
125.25
1961
1,529.92
76.50
*24 After certain concessions by petitioners, three issues remain for our consideration: (1) Where was petitioner's "home" for purposes of determining the deductibility of certain expenses incurred while traveling "away from home"? (2) Has petitioner adequately substantiated various deductions? (3) Are petitioners properly subject to the addition to tax pursuant to section 6653(a)? Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, Abe and Sarah R. Brenner, are husband and wife and maintained a residence in Brookline, Massachusetts, at all times materially relevant herein, which constituted their legal residence at the time the petition herein was filed. Their Federal joint income tax returns for each of the taxable years 1959, 1960, and 1961 were filed with the district director of internal revenue for the district of Massachusetts. All references to "petitioner" shall be deemed to refer to Abe Brenner. During the years relevant herein, petitioner was employed as a salesman for William E. Bixby, Bixby Box Toe, Bixide Rubber Company, Donnell Bixby, and Sewall *25 & Son. These companies were commonly owned and engaged in the manufacture and sale of components for shoes. Sewall & Son was located at Brunswick, Maine, Donnell Bixby at Auburn, Maine, and the remaining three companies at Haverhill, Massachusetts, in the Boston area. Petitioner worked on a commission basis and reported business receipts for the years in question as derived from the following sources: Sources
1959
1960
1961
Sewall & Son
$15,039.44
$11,627.02
$18,736.89
Donnell Bixby
430.46
787.48
W. E. Bixby Co.
5,300.00
3,694.73
1,975.50
Bixby Box Toe
2,650.00
1,979.36
1,250.65
Bixide, Inc.
7,850.00
744.64
Total
$31,269.90
$18,045.75
$22,750.52
Petitioner's customers were located in Massachusetts, New Hampshire, Maine, and Connecticut. Although his activities fluctuated somewhat, his typical itinerary during the years in question was to call upon customers in Massachusetts and New Hampshire on Mondays; customers in New Hampshire and Maine on Tuesdays; customers in Maine on Wednesdays and Thursdays; and to retrace his route south on Fridays. He would spend at least half a day on Saturday visiting customers in the Boston area, and would *26 also report to the Haverhillbased headquarters of his companies every weekend. Petitioner usually stayed over the weekend at his apartment in Brookline. During the years involved herein, he paid rent of approximately $145 per month on such apartment. He did not deduct any portion of the Brookline apartment rent nor the cost of any of his non-business-connected meals eaten in the Boston area. On Monday morning he would start his weekly trip north, usually stopping to spend Monday night at the Sherwood Hotel, in Dover, New Hampshire. His travels on Tuesday, Wednesday, and Thursday were so arranged that it was feasible for him to spend each of these nights in Brunswick, Maine. From January through May of 1959, petitioner spent these nights in motels or hotels in and around the Brunswick area. In June of 1959, however, he rented an apartment in Brunswick and, when in that area, consistently stayed there during the years here in question. Petitioner rented the Brunswick apartment because it was less expensive than the amount he would otherwise have spent had he stayed at hotels and motels in the area. The apartment was a modest one-bedroom with kitchenette and rented for $69.50 and later *27 $82.50 per month during the years in question. During 1959 to 1961, petitioner stayed overnight in Brunswick for 162, 220, and 240 nights, respectively. Officials of the Bixby companies had keys to the Brunswick apartment and sometimes stayed there overnight. In addition, the apartment was sometimes used for business discussions or entertainment. Petitioner's son, Mary, also a salesman for Sewall & Son, had a key to and stayed in the apartment one or two nights a week during the years involved. On occasion, petitioner's wife would accompany him on trips and stay in the Brunswick apartment. Petitioner's driver's license was issued by and his automobile registered in the State of Massachusetts. His car insurance listed his residence as 1157 Beacon Street, Brookline, Massachusetts. He was a member of the New England Shoe Foreman's Association, being listed as a member of the Boston branch of that society. During the years in question, petitioner maintained a checking account in the New England Merchants National Bank of Boston, the bank statements from which were mailed to him "c/o Sewall & Son, Inc., P.O. Box 90, Brunswick, Maine." He also maintained a checking account at the Casco *28 Bank in Brunswick, Maine. During the years in issue, he had an office in Brunswick, where his secretary-bookkeeper kept his business records and drew checks on his personal checking account. Petitioner kept on his person a monthly diary in which he recorded his business expenditures and his itinerary, including the major business stops which he made each day. Entries were usually made in the diary at the end of each day, though at times a day or two would elapse between the time of expenditure and the entry thereof. Expenses entered in the diaries were posted by petitioner's bookkeeper into various accounts in monthly columnar journals. At year-end, a summary sheet was prepared, purporting to reflect total annual expenditures for meals, hotel, liquor, cigars, gas, tolls, auto expense, customer entertainment, phone, checking and tips, and miscellaneous items. The bookkeeper sometimes entered amounts for gas in the "Auto Expense" account. Similarly, she sometimes recorded in the "Entertain Customers" account amounts for petitioner's own meals and sometimes posted meals of customers to petitioner's "Meals" account. The diary also reflected some personal items. Petitioner was authorized *29 to make charges for gas and other auto items on a credit card issued to him by Sewall & Son. Expenditures charged to this card were not recorded in petitioner's daily diary, nor did he retain any evidence of such charges. The credit card bills were sent directly to Sewall & Son, who paid them and deducted a corresponding amount from the commissions due petitioner. For the years involved herein, petitioner reported his total commissions earned from Sewall and included in his deductions for business expenses the credit card bills paid directly by that company and charged to his account. Petitioner did not receive any vouchers or other evidence of the payments made by Sewall. Occasionally, petitioner would make cash purchases of gas at stations where his credit card was unacceptable. He did not retain receipts from such purchases. During the years in question, petitioner drove a Lincoln automobile purchased in 1959 at Park Motor in Auburn, Maine. The purchase was financed at Depositors Trust Company, a bank in Lewiston, Maine. Petitioner drove approximately 45,000 miles in 1959, 40,000 miles in 1960, and 30,000 miles in 1961 in pursuit of his business. His automobile averaged about 12 *30 miles per gallon, at an average cost of 35 cents per gallon. In line with the customary practices of the shoe trade, petitioner often gave customers or their employees cigars, liquor, or other gifts. Petitioner did not smoke cigars. During the years involved herein, there was a considerable increase in the sales of some of the companies represented by petitioner. Such increases were in large part due to the efforts of petitioner. It was also the practice of petitioner and his salesmen friends to congregate in the evening at various hotels and take turns buying rounds of drinks. The same usually occurred in Boston on Saturday afternoons, after petitioner had finished his required business visits for the day. Petitioner also bought drinks for customers on occasion. Petitioner's summary sheet for 1960 showed "Paid to Sewall & Son on April 15, 1960 Loan of… $1,000.00." The summary sheet for 1961 noted the following items: 1/5/61 Paid Loan to Sewall
& Son, Inc.
$2,000.00
Int. Pd. to New Eng. Mer-
chants Nat'l Bk.
$ 70.00
Int. Pd. to Depositors
Trust Co.
161.00
231.00
Respondent determined that petitioner had failed to report $3,255.36 in commission *31 income for 1960. At the end of each year, petitioner would receive a Form 1099 (Information Return) stating how much he had earned by way of commissions from each of the companies he represented. Petitioner believed the omission, which he conceded, was traceable to one of the Haverhill companies - most likely Bixide Rubber Company, which company had gone out of business in that same year - but could not recall whether he had ever received a Form 1099 from Bixide for 1960. Respondent also determined that interest income in the amounts of $39.24, $58.62, and $141.48 in 1959, 1960, and 1961, respectively, had been omitted from income in such years, representing interest from a bank account opened and maintained by Sarah R. Brenner. Petitioner, himself, was not aware of the existence of such account. The following tables represent the amounts of the various deductions at issue claimed on petitioners' tax returns, the corresponding amounts allowed by respondent on audit, and the additional amounts which, on the basis of the record herein, we find as a fact that petitioner expended for business or otherwise deductible purposes. 1959 Taxable Year
Claimed
Allowed by
Additional
on return
respondent
allowance herein
Meals
$ 859.13
$ 590.92
$ 268.21
Lodging (including Brunswick rent)
2,714.07
480.64
1,105.86
Cash gas & tolls
329.75
Auto & parking
1,123.34
1,085.50
Credit card gas, etc.
1,648.84
777.50
Liquor
692.70
324.90
Cigars
245.75
Customer entertainment
931.63
292.03
100.00
Checking & tips
308.35
50.00
Phone & misc.
579.76
491.54
25.00
Taxes
477.54
Insurance
335.11
75.00
Accountants' fee
50.00
50.00
1960 Taxable Year
Meals
$1,052.29
Lodging (including Brunswick rent)
1,659.03
$ 543.38
$1,842.91
Cash gas & tolls
1,237.91
Auto & parking
970.11
558.71
Credit card gas, etc.
970.67
1,008.29
Liquor
720.60
342.30
Cigars
224.29
Customer entertainment
1,281.22
569.35
100.00
Checking & tips
267.80
50.00
Phone & misc.
969.98
589.05
25.00
Taxes
187.49
Insurance
303.42
75.00
Accountants' fee
75.00
75.00
Interest
30.25
1961 Taxable Year
Meals
$1,178.03
Lodging (including Brunswick rent)
1,047.59
$ 84.19
$2,141.43
Cash gas & tolls
269.63
Auto & parking
862.53
650.98
Credit card gas, etc.
674.95
549.02
Liquor
828.55
586.10
Cigars
208.27
*
Customer entertainment
1,665.47
999.04
100.00
Checking & tips
257.05
50.00
Phone & misc.
603.52
543.00 *
25.00
Taxes
118.80
Insurance
146.00
75.00
Accountants' fee
175.00
75.00
Interest
231.00
161.00
*32 Ultimate Finding of Fact At least part of the deficiency for each of the years 1959, 1960, and 1961 was due to negligence or intentional disregard of rules and regulations. Opinion Issue No. 1 - "Away from home" Initially we are confronted with the question whether certain expenditures by petitioner, a traveling salesman, for meals and lodging in Brunswick, Maine, constituted "traveling expenses * * * while away from home in the pursuit of a trade or business" within the meaning of section 162(a). Petitioner argues that his "home" for tax purposes during the years involved was Brookline, Massachusetts. Respondent counters with the assertion that his tax home was Brunswick. We hold for petitioner. The "away from home" concept has had a troublesome history. It has produced a briarpatch of decisions, whose sharpest thorns are the result of the studied reluctance of the Supreme Court to provide definitive criteria of general applicability. Commissioner v. Stidger, 386 U.S. 287 (1967); *33 Commissioner v. Flowers, 326 U.S. 465 (1946); cf. Peurifoy v. Commissioner, 358 U.S. 59 (1958), and particularly the dissenting opinion of Mr. Justice Douglas at p. 62; see generally 4A Mertens, Law of Federal Income Taxation (Riordan Rev.), sec. 25.93; Haddleton, "Traveling Expenses 'Away from Home'," 17 Tax L. Rev. 261 (1962). The great bulk of the cases in this area deal with situations unlike the one involved herein - commuter expenses, taxpayers who by choice maintain their residence at a distance from their place of employment, itinerant workers, and taxpayers who carry on two or more distinctly separate businesses at widely-spaced geographic locations. To be sure, two of the companies which petitioner represented were located in Maine, one in Brunswick and one in nearby Auburn, and three were located in Haverhill, Massachusetts, near Brookline. But this fact alone does not negate the essentially unitary character of petitioner's employment, namely, that of a traveling salesman for five related companies engaged in the manufacture of shoe components. Nor is the fact that petitioner derived more of his income in the years in question *34 from the Maine-based companies determinative, especially since the proportion varied from year to year. Joseph H. Sherman, Jr., 16 T.C. 332 (1951). Similarly, the fact that petitioner spent more nights in Brunswick than in Brookline does not require us to hold that Brunswick was his tax "home" even if we assume that this indicates that more of petitioner's employment was carried on in the Brunswick area than the Haverhill area. [2]Alois Joseph Weidekamp, 29 T.C. 16 (1957). If, instead of renting an apartment in Brunswick, petitioner had spent his nights in various motels or hotels en route, it would be hard to see any ground on which respondent could properly have challenged his deduction of otherwise substantiated expenses, even though the motel or hotel charges exceeded the amount paid as rent. Nor is petitioner's position undermined by the facts that the apartment was occasionally used for business purposes by personnel of petitioner's *35 employing companies and that petitioner's wife and son, who was also a salesman for one of the Maine-based companies, occasionally stayed there. Even if we assume that petitioner could properly have sought reimbursement for the share of the rent attributable to the occupancy by such personnel (cf. William C. Stolk, 40 T.C. 345, 356 (1963), affirmed per curiam, 326 F.2d 760 (C.A. 2, 1964)) and that the occupancy of his wife and son was "personal," it is apparent that petitioner did not rent a larger apartment than was necessary for his own purposes and that therefore the rental would have been the same. Cf. Rev. Rul. 55-57, 1955-1 C.B. 315. Petitioner's weekly itinerary started in the Boston area and ended in the Boston area, near the headquarters of three of his employers. His activities on behalf of these employers were more than a mere incidental part of his total employment. His decision to rent an apartment was designed to cut down on his travel expenses - a legitimate and prudent exercise of business judgment. We think respondent has placed entirely too much emphasis on certain incidental aspects of petitioner's presence in Brunswick. *36 We are not disposed to impose upon this petitioner the burden of guessing which companies would provide him with the greater income or where he would be spending most of his time as a foundation for deciding where to establish his "home." We think petitioner had substantial business reasons for choosing to maintain his home in Brookline and we see no reason to penalize him for so doing. Cf. Pierce v. United States, - F. Supp. - ( W. D. Ark., July 17, 1967, 20 AFTR 2d 5128). Under all the facts and circumstances, we hold that petitioner's "home" for tax purposes was in Brookline and that the entire rental expense of the Brunswick apartment is deductible. Joseph H. Sherman, Jr., supra.
Issue No. 2 - Substantiation We now turn to the issue of substantiation of petitioner's expenses. Here we are faced with the vagaries of the record - par for the course in this type of situation. Petitioner kept a diary, which under certain circumstances can be an accepted method of substantiation. Sec. 1.162-17(d)(2), Income Tax Regs. But we are unable *37 to accord full effect to his diary, principally because petitioner conceded that in several instances personal expenditures were included in the diary and because many of the recorded items represent sizeable amounts of a type which normally would be expected to be covered by checks or receipted bills. To be sure, for all of the years in question petitioner exhibited some $12,000 of checks and bills to respondent during the audit of his returns and respondent allowed only some $8,700 of the items covered. But the record is barren of any testimony as to business purpose related to specific items. Clearly the settlement process is more conducive to the disposition of problems of substantiation of the type of business expenses involved herein. The parties herein were not, however, endowed with sufficient flexibility and perspicacity to reach a settlement, despite considerable encouragement from the Court. Under the circumstances, we are left with no alternative but to make the best judgment we can on the basis of the entire record before us within the context of Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930), a case which retains its full vitality as applied to the *38 taxable years before us. Our task has been heavier because categorization of an expenditure in petitioner's diary did not, by petitioner's own admission, always coincide with the actual facts. We were also faced with an unexplained, incoherent pattern of expenses in relation to income, several items of expense going up as income went down, although it would have been more natural for both sides of the equation to move in unison. Our factual conclusions as to the amounts of the deductions to which petitioner is entitled are set forth in our Findings of Fact and need not be repeated here. We will only indicate the rationale which underlies some of those conclusions arrived at pursuant to the injunction of Cohan that we should "bear heavily * * * upon the taxpayer whose inexactitude is of his own making" (see 39 F. 2d at p. 544) and keeping in mind the tenet that the mere fact of expenditure is not proof of business purpose: (a) With respect to expenditures for gasoline, we are satisfied that petitioner used his car for business to the extent of 45,000 miles in 1959, 40,000 in *39 1960, and 30,000 in 1961. Using a standard of 12 miles per gallon and an average cost of 35 cents per gallon, this produces an allowance of $1,313 for 1959, $1,167 in 1960, and $875 in 1961, respectively. [3]
(b) We approximate petitioner's parking on business travels at $150 for 1959, $100 for 1960, and $75 in 1961, respectively. (c) We approximate petitioner's businessconnected expenditures for automobile repairs, oil, etc. at $400 for 1959, $300 for 1960, and $250 for 1961. In so doing, we are mindful that petitioner neither claimed that the car was used exclusively for business nor did he offer any evidence of the extent of nonbusiness use. We also note that some of the expenditures were large in amount and could have represented capital items. In this latter connection, we have recognized that, in view of the large annual mileage, expenditures for tires would probably constitute a deductible expense. (d) To the extent indicated *40 by our conclusions in (a), (b), and (c), petitioner's deductions for cash gas and tolls, credit card charges, and auto expense are approved. From these amounts, the allowances by respondent on audit must be subtracted to determine the additional deductions to which petitioner is entitled. (e) Respondent disallowed all deductions for "taxes." Petitioner offered no evidence as to how the amounts deducted were arrived at, what types of taxes they represented (with the exception of a single unexplained large item of $294.50 under auto expense), or corroborating evidence of payment, although some such evidence should have been readily available. Accordingly, we have no way of making even an educated guess at the amount which might properly be deductible. We hold that petitioner has failed to meet his burden of proof as to this item. (f) As to the deduction for auto insurance, we again have no evidence as to the extent to which such expenditures were business related. There was a 50 percent drop in amount between 1960 and 1961, indicating that some of the payments may have been allocable to other members and/or automobiles in petitioner's family. We think it clear, however, that petitioner *41 had some auto insurance expense that was business related and accordingly hold that he is entitled to a deduction of $75 in each of the three years. (g) With respect to food, it appears that charges for meals of other persons were sometimes included even though there was no business relationship. Also, petitioner conceded that the cost of his meals was sometimes included in the category of "customer entertainment." Nevertheless, keeping in mind the amount of time which petitioner spent in business travel, we think the amounts claimed under the category of "Meals" - namely, $859 in 1959, $1,052 in 1960, and $1,178 in 1961 are extremely modest. We therefore hold that these amounts are deductible. (h) With respect to lodging, we have already held that petitioner is entitled to deduct the rental of the Brunswick apartment. Petitioner's schedule called for him to be on the road four nights per week. He stayed in a motel or hotel during the pre-apartment era. We think an allowance of $10 per night, or $800, is in order for this period. In the post-apartment era, petitioner spent one night per week in a motel or hotel. Thus, using the same $10 per night cost, he is entitled to deduct *42 $300 in 1959 and $500 in 1960. In 1961, he apparently spent few nights in a motel or hotel because he deducted an amount only slightly in excess of the apartment rental; we have therefore limited his deduction to the amount claimed. On this issue, we have made the reasonable assumption, in the absence of evidence to the contrary, that petitioner took at least a two-week vacation each year. (i) For 1960 and 1961, respondent aggregated meals and lodging and gave petitioner a single allowance for both items. Accordingly, in determining the additional deduction to which petitioner is entitled for purposes of the Rule 50 computation, these two items should be aggregated for all three years before us and the amounts reflected in (g) and (h) should be reduced by the amounts allowed by respondent. (j) We deal now with petitioner's claimed deductions for liquor, cigars, and customer entertainment. First, we note that petitioner did not adequately explain the sharp increase in these items over the years in question. We realize that, particularly with regard to the Sewall company, his efforts were responsible for considerable sales increases. Yet, petitioner's own commissions do not seem *43 to have increased commensurately. Further, we cannot determine the extent to which such increased sales were due to either added customers or to larger purchases by already existing customers. Secondly, we feel that petitioner has not adequately substantiated the claimed expenses as to business purpose. Although he apparently entered amounts in his diary for "cigars" and "liquor" in a regular fashion, he never once indicated therein the objects of his bounty. We do not deem as sufficient substantiation the "lists" of gifts introduced into evidence for 1959 and 1960. These lists indicate only names of the donee and the nature of the gift. They made no mention of cost or price. While petitioner did not smoke cigars, the record indicates quite clearly that he was by no stretch of the imagination a teetotaler. Petitioner testified that it was his common practice to get together with some of his fellow salesmen after a day's work. Each would buy the others a few rounds of drinks. We are not convinced that such get-to-gethers served any purpose other than mere camaraderie, and we are not prepared to allow their cost as business deductions. As to amounts claimed for "customer entertainment, *44 " we received little or no information as to whom he entertained, the nature of the entertainment, or the business reasons, if any, for such entertainment. While respondent allowed petitioner certain amounts in these categories, he limited himself on audit to expenditures evidenced by check or other written material. We recognize that petitioner must have had some additional business expense in these categories and accordingly hold that he is entitled to an additional deduction of $100 in each of the years before us. Beyond this, we see no need for any further adjustment to respondent's determination. Cf. Reginald G. Hearn, 36 T.C. 672 (1961), affd. 309 F. 2d 431 (C.A. 9, 1962). (k) With respect to the deduction for "checking and tips," respondent made no allowance whatsoever. This is customarily a cash item and petitioner made regular entries in his diaries with respect thereto. While the amounts which petitioner deducted are not large in light of his expenditures for meals and lodging, we have no way of knowing the extent to which expenditures in this category were already included in the cost of such items. In the absence of any concrete evidence, *45 we hold that petitioner is entitled to a deduction of $50 in each of the three years before us. (1) Petitioner claimed deductions of $580, $970, and $603 for "phone and miscellaneous." Respondent disallowed $88, $380, and $60. Again, as a traveling salesman, petitioner must have had some cash expenditures included in his diary entries, even if we assume (as we must in the absence of contrary evidence) that he placed collect calls to his employers. We hold that petitioner is entitled to an additional deduction of $25 in each of the years before us. (m) Petitioner deducted $50, $75, and $175 for accounting fees. The record shows that the returns were signed by an accounting firm. The amounts of $50 and $75 in 1959 and 1960 appear reasonable. Petitioner furnished us no reason for the substantial increase in 1961. Under the circumstances, we hold that petitioner is entitled to $50 for 1959 and $75 for each of the years 1960 and 1961. (n) Petitioner deducted interest expense of $30.25 in 1960 and $231 in 1961, all of which was disallowed by respondent. Petitioner testified that he financed the purchase of his car at the Depositors Trust Company and there is an indication that $161 *46 was paid to that bank in 1961. Beyond this, the record is utterly barren. Here, again, a slight effort on petitioner's part should readily have produced some corroboration. Under these circumstances, we do not think petitioner has met his burden of proof except with respect to $161 for 1961. Before leaving the issue of substantiation, we are constrained to note that, in this area, taxpayers such as petitioners face the double burden of the presumptive correctness of respondent's determination and the firmly imbedded legal principle that deductions are a matter of grace. They would do well to give more care and attention to the keeping of their records relating to such expenditures. Certainly, the recent changes in the travel and entertainment expense area make clear that they must do so. Section 274; Sec. 1.274-5, Income Tax Regs.
Issue No. 3 - Negligence Under section 6653(a), petitioner is liable for a 5 percent addition to tax if "any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations." (Emphasis added. *47 ) We see no need to dissect the various grounds upon which respondent bases his assertion that petitioner is liable under that section. We note particularly that petitioner was extremely careless in his recording of items in his daily diary and we conclude that he did not observe the minimum requirements of substantiation. We also note that the $3,255 of commission income omitted in 1960 represented a substantial sum in relation to his total income for that year and should reasonably have put him on notice that something was askew. The burden of proof that respondent's position is erroneous is on petitioner. David Courtney, 28 T.C. 658 (1957). On the basis of the entire record before us, we hold petitioner has failed to meet his burden. In order to reflect the opinion of the Court on the various issues herein, Decision will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954, as amended.↩
*. Aggregate amount allowed for cigars, checking and tips, phone and miscellaneous.↩
2. While it is true that petitioner stayed overnight in Brunswick for a considerable portion of each of the years in question, he nevertheless engaged in a substantial amount of business activity outside its radius.↩
3. We note that the car-related expenditures claimed by petitioner in 1961 were only 60 percent of the amounts claimed in 1959 and 1960. By way of contrast, the credit card charges were substantially less in both 1960 and 1961 as compared to 1959.↩